JOHNSON, Justice.
[Jn this workers’ compensation case, the workers’ compensation hearing officer terminated Ms. Clay’s benefits, finding the employer had sufficiently proved the availability of jobs such that Ms. Clay was capable of earning ninety percent of her pre-injury wages. The court of appeal reversed, finding the jobs identified by the vocational rehabilitation counselor were not available to Ms. Clay. We granted this writ application to review the correctness of the court of appeal’s decision. Finding no manifest error in the hearing officer’s decision, we reverse the decision of the court of appeal and reinstate the ruling of the hearing officer, terminating Ms. Clay’s benefits as of August 25, 2008.
FACTS AND PROCEDURAL HISTORY
Gloria Clay sustained a work-related back injury on June 28, 2005, while employed as a “SPD technician” (supply, purchasing and distribution) for Our Lady of Lourdes Regional Medical Center (“Lourdes”). Ms. Clay had worked in this position at Lourdes for twenty-two years and earned approximately $9.95/hour. Following the accident, Ms. Clay was diagnosed by Dr. Thomas Bertuccini with | asymptomatic spinal stenosis at L4-5, and underwent surgery on May 8, 2007. Dr. Bertuccini discharged Ms. Clay for light duty work on October 3, 2007. She was subsequently referred to Dr. Sanjiv Jindia for pain management.
Ms. Clay filed a Disputed Claim for Compensation on June 1, 2006. Although Lourdes disputed the claim, it voluntarily paid weekly benefits based on an average weekly wage (“AWW”) of $370.00. Lourdes also paid for medical benefits, although there was some dispute at the time of trial as to the timeliness of certain payments.
Ms. Clay’s workers’ compensation claim went to trial on June 5, 2007, December 10, 2008, and December 12, 2008. Following trial, the hearing officer found that Ms. Clay sustained a work-related accident on June 28, 2005, and ruled she was entitled to weekly compensation benefits in the amount of $252.03 based upon an AWW of $378.05 beginning December 29, 2005 through August 25, 2008, subject to a credit for all weekly compensation benefits paid by Lourdes, including a credit of $3,946.72 representing payment after August 25, 2008 to be applied only against weekly benefits. The hearing officer found the evidence proved Ms. Clay was *538 capable of earning ninety percent or more of her AWW, and therefore ordered that Lourdes had no further obligation to pay Supplemental Earnings Benefits (“SEBs”). Benefits were terminated as of August 25, 2008. The court of appeal reversed the hearing officer’s decision,[1] finding the jobs identified by the vocational rehabilitation counselor and approved by Dr. Jindia were outside of Ms. Clay’s experience and training. Thus, the court concluded that the positions were not suitable for Ms. Clay and were, therefore, unavailable pursuant to La. R.S. 23:1221(3).[2] The court also |sfound the hearing officer erred in calculating Ms. Clay’s AWW by failing to include certain leave benefits.
Lourdes filed a writ application in this Court raising two issues: 1) Ms. Clay’s ability to earn ninety percent or more of her AWW; and 2) the proper calculation of AWW, specifically whether Ms. Clay’s unused and untaxed leave should be included in the AWW. This Court granted the writ application and remanded the matter to the court of appeal to reconsider its ruling with regard to the calculation of the AWW in light of this Court’s ruling in Hargrave v. State, through DOTD, 10-1044 (La.1/19/11), 54 So.3d 1102.[3] Following remand, the court of appeal reversed its prior ruling on the issue of calculation of the AWW.[4] Lourdes then filed the instant writ application re-raising the issue of whether Ms. Clay is able to earn 90% or more of her AWW, which we granted.[5]
^DISCUSSION
The purpose of SEBs is to compensate the injured employee for the wage *539 earning capacity he has lost as a result of his accident. Poissenot v. St. Bernard, Parish Sheriff’s Office, 09-2793 (La.1/9/11), 56 So.3d 170, 174; Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). La. R.S. 23:1221(3)(a) provides that an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn 90% or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Poissenot, 56 So.3d at 174; Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the employee’s claim for SEBs, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Poissenot, 56 So.3d at 174; Banks, 696 So.2d at 551.
In this case, Ms. Clay was released by her treating physician for light duty work, and it is undisputed that Ms. Clay cannot return to her previous job at Lourdes. Both parties agree that Ms. Clay is not working, nor was she offered a job by any employer. Additionally, Lourdes does not dispute that Ms. Clay met her initial burden of proving her injury resulted in an inability to earn 90% of her prior wages. Thus, the only issue for this Court’s consideration is whether Lourdes met its burden of proving a job was “available to” to Ms. Clay in her geographic region that would enable her to earn 90% or more of her pre-injury wage.
lBIn discussing whether a job is “available,” this Court has held that actual job placement is not required. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161, 1166 (citing Banks, 696 So.2d at 556). In Banks, we discussed in detail the meaning of “job availability,” holding that an employer may discharge its burden of proving “job availability” under La. R.S. 23:1221(3)(c)(i) by establishing, at a minimum, by competent evidence:
(1) the existence of a suitable job within claimant’s physical capabilities and within claimant’s or the employer’s community or reasonable geographic region;
(2) the amount of wages that an employee with claimant’s experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job’s existence.
Banks, 696 So.2d at 557 (emphasis added).
We defined “suitable job” as “a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant’s age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education.” Id. Further, we explained that consideration of an employee’s “age, experience, and education” is not to ensure that an employee is “particularly suited” for a given post-injury job, but, rather, to ensure that the employee is capable of performing the job. Id. at n. 3.
The evidence presented at trial relative to Ms. Clay’s ability to work and available jobs is summarized below. At the time of trial, Ms. Clay was 56 years old. Lourdes hired Gretchen Montero, a licensed vocational rehabilitation counselor, to provide vocational rehabilitation to Ms. Clay. According to Ms. Montero’s records, Ms. *540 Clay graduated from high school in 1971 and had no additional trade or vocational training. Ms. Clay took typing in high school and used a computer in her |fjob at Lourdes to enter information, but does not use a computer at home. Ms. Clay’s work history consists almost exclusively of her job as a SPD technician at Lourdes, where she worked from 1975 to 1986, and again from 1995 until her accident in 2005. Ms. Clay temporarily worked at a bakery making pies for two months, although no time frame was provided. Ms. Clay earned approximately $9.95/hr at Lourdes and her primary job duties included stocking shelves, pulling and delivering supplies, and entering patient charges into a computer on a pre-formatted form.
Ms. Clay’s initial vocational rehabilitation interview with Ms. Montero occurred on March 26, 2008. Ms. Montero testified she met with Ms. Clay and reviewed her work history, educational background, medical issues, work issues and vocational goals. Ms. Montero then initiated a job search (Labor Market Survey) for appropriate jobs. Further, following the Initial Evaluation on March 26, 2008, Ms. Monte-ro performed a transferable skills analysis based on' Ms. Clay’s work history, and opined Ms. Clay had developed the following skills: (1) product inspection (inspecting and evaluating the quality of products); (2) information organization (finding ways to structure or classify multiple pieces of information); (3) reading comprehension (understanding written sentences and paragraphs in work related documents); (4) active listening (listening to what other people are saying and asking questions as appropriate); (5) information gathering (knowing how to find information and identifying essential information); and (6) writing (communicating effectively with others in writing as indicated by the needs of the audience). Based on this information, Ms. Montero found that alternate job types for Ms. Clay would be general office clerk, production clerk, transportation maintenance clerk, library clerk, insurance claims clerk and medical records clerk.
On April 25, 2008, Ms. Montero sent a letter to Ms. Clay, through her attorney, _Jjlisting two available jobs at the Medical Center for Southwest Louisiana. She also recommended that Ms. Clay contact the Lafayette Parish Library because the library offers free computer classes (basic computers, internet use, power-point and spreadsheets) on a monthly basis. Ms. Montero stated this would give Ms. Clay an opportunity to learn new computer skills which would enhance her employability. On that same date, Ms. Montero also sent Ms. Clay the Career Occupational Preference System Interest Inventory (“COPS Inventory”) for her to complete. Ms. Montero testified the purpose was to determine Ms. Clay’s interests in order to develop some type of appropriate vocational goal.
Ms. Clay did not complete the COPS Interest Inventory until June 20, 2008, and returned it to Ms. Montero on June 26, 2008. The inventory lists 126 activities and asks applicants to rate their interests as “like very much,” “like moderately,” “dislike moderately,” or “dislike very much.” Out of the 126 activities, Ms. Clay did not rate any as “like very much.” She rated six activities as “like moderately,” and the remaining 120 were rated as “dislike moderately” or “dislike very much.” Ms. Clay responded “liked moderately” to the following activities: (1) start up and operate own business; (2) arrange flower displays; (3) use a computer in an office to report information on airplane arrivals; (4) keep records of materials on hand and supplies received; (5) talk with students or patients to put them at ease; and (6) select and organize books, newspaper clippings and reports. Ms. Montero testified Ms. *541 Clay’s interests fell high on the clerical interest category.
Ms. Montero had a follow-üp meeting with Ms. Clay in July of 2008 to discuss the job search and to help her work on a resume. Ms. Montero testified she reviewed potential jobs with Ms. Clay at that time and subsequently prepared a resume for Ms. Clay, which she sent to Ms. Clay’s attorney on July 18, 2008.
IsDuring the time she worked on Ms. Clay’s case, Ms. Montero identified numerous jobs available for Ms. Clay and timely notified Ms. Clay of the same. However, there were only three specific jobs identified and approved by her treating physician which were still available at the time of approval.[6] Dr. Jindia approved four jobs on June 17, 2008, but only three were still available as of that date. Thus, Ms. Montero testified that she found three jobs within the restrictions that Dr. Jindia approved and were open at the time of approval. All of the jobs paid in the $9.00-$12.00/hr range and were full-time. Ms. Montero testified that she obtained as much detail about the potential jobs as the employers would provide. She provided Ms. Clay with all of the information she received.
Specifically, on May 29, 2008, Ms. Montero sent information on four available jobs to Dr. Jindia for approval. Dr. Jindia submitted approval for the four jobs on June 17, 2008, at which time only two of the jobs were still open. The two open jobs were both with the Medical Center of Southwest Louisiana, and the following job descriptions were provided:
Administrative Assistant-Human Resources Department at the Medical Center of Southwest Louisiana: Duties in-eluded assisting the department with credentialing, filing, projects, and greeting applicants to the department; physical demands were light, with only occasional standing and walking; pay $12.00/ hour; full time.
Service Coordinator with the Medical Center of Southwest Louisiana: Duties included providing clerical support for engineering programs, answering the phone, taking messages, and maintaining files; physical demands were light with occasional standing and walking; pay$9.00/hr; fulltime.
The other two jobs approved by Dr. Jindia were:
Front desk receptionist for Dr. Norman Dykes: $8.00/hr, full time; job duties included maintaining the appointment book; answering the | sphone; preparing bills, insurance.
Ms. Clay applied for this job but received a rejection letter stating “we have chosen to pursue other candidates whose skills, background and education more closely match our needs.”
Telephone consultant with Stutter Settings: duties involved receiving telephone calls from customers and process/assist them with placing jewelry merchandise orders, and entering customer information using simple pre-for-matted program; five-week paid on the job training provided; $10.00/hour; full time.
While the job with Stuller Settings was no longer available at the time of Dr. Jindia’s initial approval, a position later opened again on August 25, 2008. Ms. Clay applied and interviewed for the position, but was rejected by letter dated November 4, 2008, stating “we have identified a candi *542 date who more closely matches our requirements.”
Regarding the three available jobs (two at Medical Center of Southwest Louisiana; one at Stuller Settings), Ms. Montero testified they were chosen based on whether Ms. Clay could do the job from an educational and experience standpoint. She explained the administrative assistant position was a basic entry-level employment position and did not require any special skills. According to Ms. Montero, although these office jobs were different than Ms. Clay’s job at Lourdes, they were not necessai'ily more difficult. Ms. Monte-ro testified that some office work is more complicated than others. Some office work requires simply answering the phone, filing and taking messages. Ms. Montero stated she was focused on finding basic clerical/receptionist type work for Ms. Clay, and while Ms. Clay has never had an office job where she was required to sit at a desk and do office work all day, she had to utilize some clerical skills in her job at Lourdes. Ms. Montero further stated that the work Ms. Clay performed at Lourdes required accuracy, orderliness and speed in order to pull the proper medical supplies and deliver them to the correct I ipplace.
Ms. Montero testified that her job was to help Ms. Clay, return to gainful employment. In locating jobs, she kept in mind Ms. Clay’s medical restrictions as well as educational limitations. Ms. Montero’s expert opinion was that work within Ms. Clay’s capabilities was reasonably available.
Ms. Clay testified she applied for all of the jobs identified by Ms. Montero, not only the ones formally approved by Dr. Jindia. She had one job interview at Stul-ler, but received no job offers.
The hearing officer found the evidence presented at trial proved Ms. Clay was capable of earning 90% or more of her pre-injury wage and therefore ordered that Lourdes had no further obligation to pay disability benefits in the form of SEBs to Ms. Clay.[7] The hearing officer found the vocational rehabilitation provided was appropriate under Banks, noting that job placement is not required. The hearing officer took into consideration the fact that Ms. Clay applied for the jobs, but essentially reasoned that this could not be the deciding factor for courts because courts cannot monitor claimants who may apply but sabotage efforts to actually obtain the jobs. The hearing officer specifically found that Ms. Montero attempted to find jobs that were suitable and within the interests of Ms. Clay. He further stated:
I’ve heard Ms. Clay testify. She is an articulate genuine person. She appears to have been a dependable and valuable employee. She was there for many, many years, and she appears to have been a very conscientious employee. I think it doesn’t give her much credit by saying that she could not have done these jobs that were identified. I think she well could have done the jobs, and I think Ms. Montero evidenced an attempt to look at the medical field because that’s where the majority or almost all of Ms. Clay’s prior work history was focused.
The court of appeal reversed, finding that the jobs identified by Ms. Montero |nand approved by Dr. Jindia, were outside of Ms. Clay’s experience and training. The court noted Ms. Clay applied for, but was unable to obtain two of the positions. The court noted “suitability is a function of availability.” The court stated Ms. Clay’s *543 experience was essentially as a physical laborer stocking and distributing supplies and equipment, with no office experience and almost non-existent computer skills. Thus, the court concluded that the positions submitted to and applied for by Ms. Clay were not suitable for her and were, therefore, unavailable under La. R.S. 23:1221 and under Banks.
The analysis we must undertake “is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage.” Poissenot, 56 So.3d at 174. We are also mindful that factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of review. Id.; Banks, 696 So.2d at 556; Smith v. Louisiana Dep’t of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Poissenot, 56 So.3d at 174; Banks, 696 So.2d at 556; Stobart v. State, 617 So.2d 880, 882 (La.1993). Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Id. Thus, “if the [factfin-der’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Banks, 696 So.2d at 556 (citing Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106,1112 (La.1990)).
Lourdes argues the court of appeal’s ruling renders Banks meaningless because li2it requires the employer to show that a job was actually offered to the claimant in order for the employer to meet its burden of proof in establishing the earning capacity of the claimant. By contrast, Ms. Clay contends that when there is evidence the jobs are not attainable by the employee, the employer has not proven the jobs were available to the employee. Ms. Clay points out she applied for each and every job but was never offered employment by any of the employers. Thus, none of the jobs were “proven available” to her.
After reviewing the record in its entirety and applying the Banks standard to the facts of this case, we conclude the hearing officer was not manifestly erroneous or clearly wrong in finding that Lourdes presented sufficient competent evidence to carry its burden.
At trial, Lourdes presented evidence that these jobs were light duty and essentially entry level positions. The evidence reflects the jobs were physically within Ms. Clay’s abilities and were basic clerical or office positions. Nothing presented reflects that these jobs required any special computer skills, or other job skills that Ms. Clay did not possess. We also note that one of the jobs (Stuller Settings) offered a paid job training program. The record demonstrates Ms. Montero did an evaluation of Ms. Clay’s transferable skills, education and experience. She matched these abilities with the physical limitations established by Dr. Jin-dia. She further attempted to identify jobs indicated by the COPS interest inventory results, although Ms. Clay disliked practically all of the listed activities. These abilities, limitations and interests were then attached to the particular jobs identified to ensure that Ms. Clay had the physical and mental skills and abilities to perform the job. Ms. Montero identified clearly that each job was within the physical limitations set forth by Dr. Jindia. Further, Ms. Montero provided a specific wage that was expected for each identified *544 | iajob, and she immediately notified Ms. Clay of the available jobs. Ms. Clay did not produce evidence to effectively dispute Ms. Montero’s opinion. Based on the evidence presented at trial, the hearing officer found the three jobs were suitable for Ms. Clay, stating that Ms. Clay appeared intelligent and that she was capable of doing these jobs from an intellectual standpoint.
After a full review of the record, we find it contains more than sufficient evidence to support the hearing officer’s findings, and thus we cannot say he was manifestly erroneous or clearly wrong in finding that Ms. Clay was able to earn 90% or more of her pre-injury wage and that such employment was reasonably available in Ms. Clay’s geographical area.
Moreover, in reviewing the hearing officer’s ruling, the court of appeal improperly applied the provisions of La. R.S. 23:1221(3) and the standards we previously set forth in Banks. La. R.S. 23:1221(3) provides that jobs identified by the employer must be proved to be either (1) offered by an employer, or (2) available to the employee in his geographic region. The court of appeal’s decision essentially requires employers to prove a job was offered to an employee in order to prove that a job is “proven available.” Such an interpretation effectively renders the second part of the statute meaningless.

CONCLUSION

For the above reasons, we find the court of appeal erred in reversing the decision of the workers’' compensation hearing officer on the issue of whether Ms. Clay was capable of earning 90% of her pre-injury wages. The record clearly provides sufficient support for the hearing officer’s findings. Thus, because factual findings in workers’ compensation cases are reviewed under a manifest error standard of review, we reverse the ruling of the court of appeal and reinstate the decision of the | shearing officer terminating benefits as of August 25, 2008.

DECREE

REVERSED. RULING OF THE WORKERS’ COMPENSATION HEARING OFFICER TERMINATING BENEFITS AS OF AUGUST 25, 2008, IS REINSTATED.

. Clay v. Our Lady of Lourdes Regional Medical Center, 09-1219 (La.App. 3 Cir. 6/2/10), 38 So.3d 1196.

. La. R.S. 23:1221(3) provides, in pertinent part:
(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his "wages” by fifty-two and then dividing the quotient by twelve.
[[Image here]]
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer's community or reasonable geographic region.
[[Image here]]

. Clay v. Our Lady of Lourdes Regional Medical Center, 10-1579 (La.4/8/11), 62 So.3d 749.

. Clay v. Our Lady of Lourdes Regional Medical Center, 09-1219 (La.App. 3 Cir. 7/13/11), 71 So.3d 539.

. Clay v. Our Lady of Lourdes Regional Medical Center, 11-1797 (La.12/16/11), 76 So.3d 1188. Because our prior remand order did not address this issue, nor did it implicitly signal agreement with the court of appeal’s ruling on this issue, Lourdes' current writ application, re-raising the issue of Ms. Clay’s entitlement to SEBs, is properly before the Court.

. Ms. Montero testified regarding ten jobs she identified for Ms. Clay. However, while these jobs were identified and sent to Dr. Jindia for approval, he had not yet responded to most of the approval requests at the time of trial.

. The hearing officer ordered benefits terminated as of August 25, 2008, the date the Stuller Settings job became available again (the latest date of the three available jobs).