JAMES F. McKAY III, Judge.
[ ]Worker’s Compensation claimant, Derrick Hall, seeks a review of the judgment from the Office of Workers’ Compensation (“OWC”), District 8, Docket # 09-10143, Diane R. Lundeen, Office of Workers’ Compensation Judge (“WCJ”), rendered in favor of the defendant, MaePapers Inc. For the reasons set forth below, we affirm the judgment.
FACTS AND PROCEDURAL BACKGROUND
On August 19, 2009, Derrick Hall was involved in a motor vehicle accident while in the course and scope of his employment, as a truck driver, for MaePapers Inc. (“MaePapers”). As a result of this accident, he essentially sustained injuries to his neck and back and was prescribed a series of pain medications, to wit, Lorcet 10 mg. and Darvocet-N-100. Pursuant to La. R.S. 23:1121(1), he received Temporary Total Disability (“TTD”) indemnity benefits from the date of the accident until November 19, 2009 when his employer, MaePapers, requested that he return to work. Mr. Hall was released to return to work by various treating medical specialist with the caveat that the work be sedentary with light duty jobs. | gMacPapers, in an attempt to accommodate these work restrictions, offered several sedentary positions to Mr. Hall with a pay scale comparable to his pre-accident pay. Mr. Hall never accepted any of the positions, nor did he return to work. In the months that followed the accident and until the trial one and a half years later, Mr. Hall continued visits with various medical physicians. Mr. Hall maintains that his primary reason for not returning to work is that he is in pain and cannot perform his job duties because the prescribed medications produce side-effects. These side-effects include complaints of nausea, dizziness and sleepiness, which he asserts essentially prevent him from performing any job, even sedentary work, and make any means of transportation to and from work impossible.
The deposition testimonies of his various treating physicians were admitted into evidence, including the following: Jason Kennedy D.C., Mr. Hall’s chiropractor; Dr. Robert Steiner, MaePapers’ independent medical examiner (“IME”) physician; Dr. Elliot Greenberg, Mr. Hall’s choice of physicians; Dr. Charles Billings, Mr. Hall’s orthopedist; and Dr. Ralph Katz, the court appointed physician.
The WCJ held: (1) that Derrick Hall suffered an accident while in the course and scope of his employment when he was *1134 involved in an auto accident; (2) that Derrick Hall sustained injuries as a result of the August 19, 2009, work-related accident; (3) that Derrick Hall, as a result of the subject work-related accident, was temporarily totally disabled from August 19, 2009 through November 18, 2009, and that the employer properly paid temporary total disability (“TTD”) benefits toUMr. Hall during this period; and (4) that Mr. Hall was capable of working at a sedentary level on November 18, 2009. The WCJ further found (5) that Mr. Hall’s earnings are the same as his pre-injury wages; and (6) that on August 12, 2010, Mr. Hall was capable of working at a medium level; (7) that Mr. Hall failed to carry his burden, and that he is not entitled to supplemental earnings benefits (“SEB”); (8) that Mr. Hall’s work-related injuries necessitated medical care; (9) that Mr. Hall’s employer, MacPapers, shall pay the outstanding New Orleans East Medical Rehab totaling $1,815.82 in accordance with the OWC fee schedule; (10) that Mr. Hall’s employer, MacPapers, shall pay the outstanding American Radiological Services’ bill totaling $106.00 in accordance with the OWC fee schedule; and (11) that MacPapers was not arbitrary, capricious, or unreasonable in its discontinuance of Mr. Hall’s indemnity benefits. Further, the WCJ held (12) that MacPapers reasonably controverted Mr. Hall’s entitlement to indemnity benefits and denied Mr. Hall’s demand for penalties and attorney’s fees in connection with employer’s actions. The WCJ also found that (13) that Mr. Hall is entitled to ongoing necessary and related medical care in conformity with the Act; (14) that Mr. Hall is not entitled to penalties or attorney’s fees in connection with MacPa-pers’ failure to pay the American Radiological Services’ bill or the New Orleans East Rehab bill because Mr. Hall failed to demonstrate that he made written demand upon MacPapers as is required by La. R.S. 23:1120 E; (15) that Mr. Hall’s case is dismissed with prejudice; and (16) that interest shall attach in accordance with law; |4and (17) that the Functional Capacity Evaluation (“FCE”) report by Michael McNeil P.T., is admissible.
LAW AND DISCUSSION
On appeal, Derrick Hall ostensibly asserts that the WCJ erred in failing to find that MacPapers was arbitrary and capricious in terminating his TTD benefits, in failing to award SEB benefits and in failing to assess attorney’s fees and penalties.
It is well settled that factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Winford v. Conerly Corp., 2004-1278, p. 15 (La.3/11/05), 897 So.2d 560, 569; Dean v. Southmark Constr., 2003-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117; Masinter v. Akal Sec., Inc., 2005-1236, p. 3 (La.App. 4 Cir. 6/7/06), 934 So.2d 201, 204. In applying the manifest error standard, the appellate court must determine not whether the fact finder was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Bell v. Mid City Printers, Inc., 2010-0818, p. 7 (La.App. 4 Cir. 12/22/10), 54 So.3d 1226, 1232 (citing Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 6 (La.7/1/97), 696 So.2d 551, 556).
INDEMNITY BENEFITS
The claimant asserts that the WCJ erred in failing to find that MacPapers was arbitrary and capricious in terminating and not reinstating his TTD benefits.

Temporary Total Disability Benefits

La. R.S. 23:1221(1). Temporary total disability:
|fi(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occu *1135 pation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (l)(a) of this Paragraph, compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (l)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (l)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee’s physical condition has improved to the point that continued, regular treatment by a physician is not required.
Hence, as set forth in the statute above, a claimant who seeks workers’ compensation benefits on the basis that he is temporarily totally disabled must prove by clear and convincing evidence, without taking pain into consideration, that he is unable to engage in any employment or self-employment. “To prove a matter by ‘clear and convincing’ evidence means to demonstrate that the existence of a disputed fact is much more probable than its nonexistence.” Molinere v. |6Vinson Guard Service, Inc., 2005-0116, p. 5 (La.App. 4 Cir. 7/13/05), 914 So.2d 566, 571, citing Louisiana State Bar Ass’n v. Edwins, 329 So.2d 437 (La.1976). Under Louisiana law, “[T]he question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony.” Hosli v. Rent-A-Center, Inc., 2006-1466, p. 8 (La.App. 4 Cir. 4/11/07), 957 So.2d 207, 212, citing Dugas v. Rosary House, 93-42 (La.App. 3 Cir. 4/6/94); 635 So.2d 570, 572. Furthermore, a claimant is entitled to temporary total disability (TTD) benefits if he proves by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment, regardless of its nature, including employment while working in pain. La. R.S. 23:1221(1); Gasway v. Cellxion, 44,638, p. 9, (La.App. 2 Cir. 1/27/10), 31 So.3d 566, 573. A claimant who can perform light duty work is not entitled to TTD benefits. Id.
The WCJ must weigh all of the evidence to determine if the claimant has met his burden of proving temporary total disability. Read v. Pel-State Oil Company, 44,218, p. 3, (La.App. 2 Cir. 5/20/09), 13 *1136 So.3d 1191, 1192; Koenig v. Christus Schumpert Health System, 44,244, p. 9, (La.App. 2 Cir. 5/13/09), 12 So.3d 1037, 1044. Based on the facts these factors are not at issue. Nevertheless, our own jurisprudence further instructs that in order to carry the burden of proving disability by clear and convincing evidence, the claimant must present “objective medical evidence.” Daniel v. New Orleans Public Service, 2002-2427, p. 6, (La.App. 4 Cir. 12/3/03), 861 So.2d 721, 726.
Pertinent to the issue of TTD benefits, the WCJ in her reasons for judgment noted the various stances of the claimant’s treating physicians during the applicable time period. The WCJ reasons are noted here below.
17Mr. Hall was initially treated at Con-centra Medical Center on the date of the accident, August 19, 2009. On September 2, 2009, Dr. Kennedy opined that Mr. Hall should refrain from working for twelve (12) weeks. On November 18, 2009, Dr. Kennedy revaluated Mr. Hall and indicated that Mr. Hall was capable of sedentary work but that he had not reached maximum medical improvement (“MMI”). On October 19, 2009, Dr. Robert Steiner found that Mr. Hall could perform the sedentary job duties of a job that MacPapers had available for Mr. Hall. On December 2, 2009, Dr. Steiner felt that Mr. Hall could drive and perform light duty work while taking his prescribed medications, Lorcet lOmg and Darvocet N-100, depending on what the light duty job entailed. On December 7, 2010, Dr. Steiner approved an available job at MacPapers within Mr. Hall’s sedentary restrictions. On December 11, 2009, Dr. Kennedy felt that Mr. Hall should not drive, use machinery nor do any activities that required alertness until he was sue that he could perform such activities safely while on medications.
“On November 9, 2009, Dr. Elliot Greenberg, claimant’s choice of physicians, felt that Mr. Hall had a ‘cervical and lumbar spinal/sprain, left shoulder sprain and bilateral knee strain, as well as posttraumatic cephalgia’. He recommended Mr. Hall see a ‘neurologist or a neurosurgeon’. Dr. Greenberg prescribed Lorcet and Darvocet. Dr. Greenberg discharged claimant to Dr. Charles Billings’ care on December 7, 2009.”
On November 24, 2009, Mr. Hall’s attorney demanded reinstatement of Mr. Hall’s TTD benefits. However, as noted above, Dr. Steiner, MacPapers’ IME, issued a second opinion that Mr. Hall was capable of working while taking his prescribed medications.
The trial court did not find that these medical opinions were discordant with each other. Clearly, the WCJ found them to be reasonable reliant determinants in her final decision.
18In the instant matter, pertinent to the issue of credibility and objective observation, the claimant asserts that he was unable to work because of pain and the side effects of his prescribed medications. Claimant’s subjective and self-reported impact of his medications is inextricably intertwined with the trial court’s credibility findings. Contrary to the claimant’s assertions, no doctor found that Mr. Hall’s injuries or the impact of his medications prevented him from working or traveling from his domicile to work. Instead they found that he should not drive while he was experiencing side effects from his medications. Further, Drs. Billings, Katz, Steiner and Greenberg testified that had the claimant complained of any side effects from the prescribed medications they would have prescribed something non-narcotic so that Mr. Hall could drive to work.
*1137 Mr. Hall testified at trial that he never told his treating physicians of the side effects of the prescribed medications. Mr. Redmann, Mr. Hall’s attorney, questioned him at trial on this issue.
Q. So, Mr. Hall, other than what you experience from taking the medicines, have you actually had conversations with doctors or people, nurses, or assistants in the doctors’ offices about what to be careful of when you’re taking these medications?
A. Yeah, and they be instructed — like if you go see the doctor, and he—
Q. Don’t tell me generally. Just tell me what conversations you remember having—
A. All right. My personal experience from what I go through with my doctors is that they’ll tell you what to expect from the medicine before you get it. And, you know, they’ll tell me, “Tell me if you like it.” Or, “Tell me what kind of effect that has on you as far as pain.” But I never had a discussion with them telling them what it do to me because they already done forewarned me.
Q. Okay. Now did you — before you take the medicines that are prescriptions that you’ve filled, prescriptions regarding your injuries, would you happen to look at the words on the bottles?
A. Not really. You know, my wife mainly handles that.
Q. Alright. So, if you felt an occasional side effect from these medicines like you’ve described, did you feel — what did you feel you needed to do about it?
IflA. (No Response.)
Q. Did you feel you needed to call the doctor’s office and report that you were having the side effects?
A. Again, they’ve instructed me before they gave it to me. So why would I tell him something that he already ■ knew. You know, I just thought that, you know, that’s what it do, so relieving my pain to a degree. So I might as well go with it.
Mr. Hall went on to testify that Dr. Billings tried injections, as an alternative to the medications, to relieve his pain and that he was still under treatment with Dr. Billings. On cross-examination, Mr. Ely, attorney for MacPapers, questioned Mr. Hall addressing the issue of the medication side effects.
Q. Did you ever make any complaints of those symptoms to either Dr. Green-berg or Kennedy or Billings?
A. Well, again, before they prescribed the meds to me, they gave me a full detail of what the meds will do.- And then my wife, she would look at the transcripts of the medicine that they give at Walgreens and the place the medicine was filled at, and she would let me know why I’m experiencing that. And I already had a clear understanding about the meds.
Q. So your answer is no, you never told any of those doctors you were having any of those symptoms?
A. The answer is no.
This Court has held that, although it may consider a claimant’s uncorroborated testimony of subjective pain concerning what his/her physical limitations might be as a result of that pain, the decision of the court should not be based on claimant’s self-serving testimony on the ultimate issue of whether the claimant is able to work. Duhon v. Holi Temporary Services, Inc., 97-0604, pp. 6-7 (La.App. 4 Cir. 10/1/97), 700 So.2d 1152, 1155; see also Scott v. Lakeview Regional Medical Center, 2001-0538, pp. 5-6 (La.App. 1 Cir. 3/28/02), 818 So.2d 217, 221-222. As this Court stated in Duhon:
We are reminded in Banks [v. Industrial Roofing & Sheet Metal Works, Inc., *1138 96-2840 p. 8 (La.7/1/97); 696 So.2d 551, 556] of “the jurisprudential tenet that worker’s [sic] compensation is to be liberally 110construed in favor of coverage,” but we are also bound by La. R.S. 28:1221(3) (c) (ii) which provides that the burden on claimant is not a mere preponderance of the evidence, but one of “clear and convincing evidence” where the disability is “solely as a consequence of substantial pain.” The legislature obviously recognized the potential for abuse in this area when it enacted this heightened standard of proof.
Duhon, 97-0604 at p. 7, 700 So.2d at 1155. See also, Bethley v. City of New Orleans, 2006-0921, p. 6, (La.App. 4 Cir. 10/18/06), 945 So.2d 738, 742.
After a review of the record and given the totality of the evidence, we find that the claimant has failed to prove by clear and convincing evidence that he was medically incapable of performing some type of work. Therefore, based upon applicable jurisprudence and pursuant to La. R.S. 23:1221(1), Mr. Hall was not entitled to receive TTD benefits after MacPapers discontinued his benefits.

Supplemental Earning Benefits

Mr. Hall asserts that the WCJ erred in finding that he was not entitled to SEB benefits.
Under the provisions of La. R.S. 23:1221(3)(a), an employee is entitled to receive SEB benefits if the employee sustains a work-related injury that results in an inability to earn ninety percent or more of the average pre-injury wage. Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in her inability to earn that amount under the facts and circumstances of the individual case. Freeman v. Poulan/Weed Eater, 93-1530, p. 7 (La.1/14/94), 630 So.2d 733, 738.
Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the claim for SEBs, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the Injob was available to the employee in his or the employer’s community or reasonable geographic region. Banks v. Industrial Roofing and Sheet Metal Works, Inc. 96-2840, p. 9, (La.7/1/97), 696 So.2d 551, 556. Actual job placement is not required. Caparotti v. Shreveport Pirates Football Club, 33,570, p. 6, (La.App. 2 Cir. 8/23/00), 768 So.2d 186,191.
The amount of an award of SEBs is based upon the difference between the claimant’s pre-injury average monthly wage and the claimant’s proven post-injury monthly earning capacity. See La. R.S. 23:1221(3)(a).
To determine if a trial court’s finding that an employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine the record for all evidence that bears upon the employee’s inability to earn ninety percent or more of the pre-injury wages. Seal v. Gaylord Container Corp., 97-0688, p. 8, (La.12/02/97), 704 So.2d 1161, 1166.
The WCJ reasoned that Mr. Hall had met with a vocational rehabilitation counselor who identified multiple suitable jobs that were within Mr. Hall’s physical capabilities and were in the employer’s community or within a reasonable geographic region. The jobs that the vocational rehabilitation counselor identified ranged in pay from $8.00 to $13.00 per hour. The WCJ also noted that on three occasions MacPapers offered Mr. Hall a modified job checking driver logs. This job was at or near the same location as his pre-acci-dent job, at the same rate of pay and *1139 within Mr. Hall’s physical capabilities, training, education and experience. Mr. Hall simply did not take this position, which was well within the medical restrictions of his doctors.
As noted above, Mr. Hall claims that he cannot get to work nor perform the duties of a job mainly because of the side-effects of his medications. None of the | ^doctors opined that he could or should drive while having side-effects from his prescribed medications. At trial, Mr. Hall admitted that he does not always experience side effects when he takes the narcotic medications. Further, his side effects range in severity. Dr. Steiner’s expert medical opinion confirms that Mr. Hall would be able to work at the job MacPapers identified while taking narcotic medications. Mr. Hall failed to produce any evidence into the record that would contradict the expert medical opinions. Mr. Hall’s argument that he would be unable to get to and from work if he were unable to drive is ludicrous. Driving is not one of the duties of his modified job nor is it the responsibility of an employer to provide transportation to its employees.
Mr. Hall failed to sustain his burden of proof that he was entitled to any SEB benefits. Mr. Hall was offered' suitable jobs with MacPapers at his former pay but declined to accept the positions. Given the totality of the evidence, the WCJ reasoned, “Mr. Hall failed to carry his burden that he had a loss of any earning capacity as a result of his work-related injury after employer discontinued the benefits. Accordingly, Mr. Hall is not entitled to supplemental earnings benefits.” We agree.
PENALTIES AND ATTORNEY’S FEES
Mr. Hall asserts that the WCJ erred in failing to award penalties and attorney fees based on the arbitrary and capricious actions of MacPapers in discontinuing and his TTD benefits, and failing to timely pay his medical expenses.
Awards of penalties and attorneys’ fees in workers’ compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 46. Although the Worker’s Compensation 11sAct is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Id. “Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation.” Brown v. Texas-LA Cartage, Inc., 98-1063, p. 8-9 (La.12/1/98), 721 So.2d 885, 890.
The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact, and the WCJ’s findings shall not be disturbed absent manifest error. Authement v. Shappert Eng’g, 2002-1631, p. 12, (La.2/25/03), 840 So.2d 1181, 1188-89. In determining the factual issue of whether an employer’s actions are arbitrary and capricious, the manifest error standard of review is applied, and the crucial inquiry is “whether the employer can articulate an objective reason for discontinuing benefits at the time it took the action.” Frith v. Riverwood, 2004-1086, p. 12 (La.1/19/05), 892 So.2d 7, 15. The Louisiana Supreme Court has also considered the circumstances under which an appellate court should reverse the decision of a workers’ compensation judge denying penalties and attorneys’ fees. In J.E. Merit Constructors, Inc. v. Hickman, 00-0943 (La.1/17/01), 776 So.2d 435, 438, the Supreme Court found that an employer’s actions in terminating an employee’s supplemental earnings benefits did not rise to the level of being arbitrary and capricious even if the actions were legally incorrect. *1140 The Supreme Court stated that “[i]t would very rarely be appropriate for an appellate court to award attorney’s fees based on employer actions which the trier of fact previously found did not rise to the level of being arbitrary and capricious (and in fact found to be meritorious.)” Id.
The WCJ was succinct in her reasons for judgment on this issue. MacPapers discontinued Mr. Hall’s TTD benefits on November 19, 2009. They had sufficient |14reason to believe that Mr. Hall was capable of performing a sedentary duty job. He was in fact offered such a job within the restriction and for comparable pay. He declined the job offer despite medical testimony that he was medically capable of performing the duties of the modified position. Therefore, MacPapers’ decision to discontinue Mr. Hall’s TTD benefits was reasonable and not arbitrary and capricious.
The WCJ found that Mr. Hall’s testimony lacked credibility. She noted that at his Functional Capacity Evaluation (“FCE”), Mr. Hall exhibited self-limiting behavior on 25% of the sixteen (16) tasks he was asked to perform. She also noted that she had the opportunity to observe his demeanor during the multiple days of trial and that he did not exhibit much distress.
He did not grimace, adjust his posture, or move around in this chair during the lengthy trial. When aware that he was being observed, he made audible sounds, but was able to move freely and bend freely when distracted and sitting at the counsel table. He did not make any sounds when he did not think he was being observed. After a two day rest between the first and second day of trial, Mr. Hall returned to court with a dramatic limp that was exaggerated and varied in magnitude, a symptom with which he did not present on the first day of trial. Mr. Hall’s testimony was dramatic but not compelling in light of the other evidence, his conduct in court, and his demeanor.
Additionally, the WCJ found that Mr. Hall failed to introduce any evidence to demonstrate that he made written demand, which is required for any penalties to be awarded for failure to pay medical bills. These include the New Orleans East Rehab bill in the amount of $1,815.82 and the American Radiology Services bill in the amount of $106.00. The WCJ noted that MacPapers is obligated to pay these bills for necessary and related treatment pursuant to the Louisiana Workers’ Compensation fee schedule.
1 ifiThe WCJ made a factual determination that MacPapers was not arbitrary and capricious in their actions toward Mr. Hall. We will not disturb its denial of penalties and attorney’s fees on appeal.
We find on the record, taken as a whole, that sufficient credible medical evidence supports the conclusion that the WCJ’s ruling was a reasonable one, and find no manifest error in the ruling. For the foregoing reasons in this opinion, we affirm the WCJ’s decision.
AFFIRMED