SANDRA CABRINA JENKINS, Judge.
| TWorker’s Compensation claimant, Michael Carambat, filed suit against defendant, City of New Orleans Police Department, alleging claims for wrongful conversion and reduction of benefits. *1033 Claimant appeals the trial court’s judgment granting defendant’s motion for summary judgment. For the reasons set forth below, the trial court’s judgment is reversed and remanded for further proceedings.
FACTS AND PROCEDURAL HISTORY
On September 8, 2007, Michael Caram-bat was involved in an accident while in the course and scope of his employment as a police officer for the City of New Orleans Police Department (“NOPD”). As a result of this accident, Mr. Carambat sustained injuries to his back, left foot, right knee, and right arm; Mr. Carambat had surgery on his left foot and also treated with an orthopedist, Dr. Timothy Devraj, for his other injuries. After Dr. Devraj’s conservative treatment proved unsuccessful, Mr. Carambat saw Dr. Carl Lowder at the NOPD’s recommendation that he see a neurosurgeon. Dr. Lowder conducted an MRI, prescribed medication, and recommended physical therapy and chiropractic treatment based on his evaluation of Mr. Carambat and Mr. Carambat’s complaints. Mr. Carambat was eventually able to return to work, but intermittently received temporary total |2disability (“TTD”) benefits pursuant to La. R.S. 23:1221(1). Mr. Carambat’s injuries from the 2007 accident were aggravated by a second work accident in September 2010.
After the 2010 accident, Mr. Carambat had surgery on his right shoulder and continued under Dr. Lowder’s care. Along with the treatment Dr. Lowder previously suggested, Dr. Lowder also prescribed Mr. Carambat a sleeping medication based on Mr. Carambat’s complaints that he was having difficulty sleeping due to his constant pain and discomfort. After a routine office visit in August 2012, Dr. Lowder informed Mr. Carambat that because of his medical condition, he should not be working full duty as a police officer and should only be allowed to work desk duty indefinitely. Mr. Carambat was released from the NOPD shortly after Dr. Lowder’s assertion, but he continued to receive TTD benefits.
After Mr. Carambat’s release, the NOPD hired a vocational rehabilitation specialist, Heyward Johnson, in order to find jobs that fit Mr. Carambat’s limitations. Based on the results of Mr. Caram-bat’s assessment and labor market survey, Mr. Johnson found five potential positions for Mr. Carambat and three of them were approved by Dr. Lowder. Thereafter, Dr. Lowder issued a letter in February 2013 to expound on Mr. Carambat’s sleep issues. Dr. Lowder’s letter stated that he believed Mr. Carambat’s chronic sleep deprivation was a result of a combination of the pain from his injuries and a side effect of the medications he takes for said pain. Dr. Lowder further opined that Mr. Carambat could work sedentary to light job duties, as long as the driving time and daily commute did not exceed 15 minutes and he could find an employer that could tolerate reduced ^performance and frequent absences because of Mr. Carambat’s persistent pain and sleep issues.
Thus, based on Mr. Carambat’s vocational evaluation, the NOPD converted his TTD benefits to supplemental earnings benefits (“SEB”), finding that Dr. Low-der’s approval of the jobs indicated that Mr. Carambat possessed at least some earning potential. In addition to the conversion to SEBs, Mr. Carambat’s benefits were reduced by the amount he could earn from the lowest paying position of the three approved by Dr. Lowder.
Mr. Carambat initiated this suit by filing a disputed claim for compensation form with the Office of Workers’ Compensation Administration, alleging claims for wrong *1034 ful conversion and reduction of benefits. The NOPD subsequently filed a motion for summary judgment, contending that Mr. Carambat’s benefits were properly converted and reduced. The trial court found that no genuine issues of material fact existed as to Mr. Carambat’s ability to work and granted the NOPD’s motion. It is from this ruling that Mr. Carambat now appeals.
LAW AND ANALYSIS
Mr. Carambat’s sole assignment of error is that the trial court erred in granting'the NOPD’s motion for summary judgment as there are contested issues of material fact regarding Mr. Carambat’s ability to work.
On appeal, our review of summary judgment is de novo, using the same standard applied by the trial court in deciding whether summary judgment is appropriate. Francis v. Union Carbide Corp., 12-1897, pp. 2-3 (La.App. 4 Cir. 5/8/18), 116 So.3d 858, 860 (citing King v. Dialysis Clinic Inc., 04-2116, p. 5 (La.App. 4 Cir. 1/4/06), 923 So.2d 177, 180). Under that standard, a motion for summary judgment shall be granted if the pleadings, depositions, answers to | interrogatories, and affidavits show there is no genuine issue of material fact. La. C.C.P. art. 966(B)(2). The burden of proof rests with the moving party and all doubts should be resolved in the non-moving party’s favor. Gailey v. Barnett, 12-0830, p. 4 (La.App. 4 Cir. 12/5/12), 106 So.3d 625, 627-28.
Once the mover establishes a pri-ma facie showing that the motion should be granted, the non-moving party shall present evidence to demonstrate genuine material factual issues remain and failure to do so mandates the granting of the motion. Smith v. Treadaway, 13-0131, p. 4 (La.App. 4 Cir. 11/27/13), 129 So.3d 825, 828 (quoting Schultz v. Guoth, 10-0343, pp. 6-7 (La.1/19/11), 57 So.3d 1002, 1006); see also, La. C.C.P. art. 966(C)(2). An issue is genuine if reasonable persons could disr agree. Treadaway, 13-0131, p. 4, 129 So.3d at 828 (citing Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). Likewise, facts are material when they “insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.” FMC Enterprises, L.L.C. v. Prytania-St. Mary Condominiums Ass’n, Inc., 12-1634, p. 6 (La.App. 4 Cir. 5/15/13), 117 So.3d 217, 222 (citing Our Lady of the Lake Hosp., Inc., 93-2512, p. 27, 639 So.2d at 751).
An employee is entitled to receive TTD benefits only if he proves by clear and convincing evidence, without any presumption of disability, that he is physically unable to engage in any employment or self-employment. Hall v. MacPapers, Inc., 11-1548, p. 6 (La.App. 4 Cir. 5/30/12), 95 So.3d 1131, 1135 (citing La. R.S. 23:1221(1); Gasway v. Cellxion, 44,638, p. 9 (La.App. 2 Cir. 1/27/10), 31 So.3d 566, 573). An employee is no longer eligible for TTD benefits when “the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may |sbe made and the employee’s physical condition has improved to the point that continued, regular treatment by a physician is not required.” La. R.S. 23:1221(l)(d). Moreover, an injured employee who is able to return to work, even if in pain, is no longer eligible for TTD benefits. Hall, p. 6, 95 So.3d at 1135 (citing Gasway, p. 9, 31 So.3d at 573).
Thus, Mr. Carambat argues that he should still be eligible for TTD benefits because the testimony presented does not establish that claimant could return to work. However, Mr. Carambat alternatively argues that even if his benefits were *1035 correctly converted to SEBs, they should not have been reduced.
SEBs are intended to “compensate the injured employee for the wage-earning capacity he has lost as a result of his accident.” Poissenot v. St. Bernard Parish Sheriff's Office, 09-2793, p. 4 (La.1/9/11), 56 So.3d 170, 174 (quoting Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 8 (La.7/1/97), 696 So.2d 551, 556). Pursuant to La. R.S. 23:1221(3)(a), in order to qualify for SEBs, an employee is required to prove, by a preponderance of the evidence, that a work related injury resulted in “his inability to earn 90% or more of his average pre-injury wage.” Clay v. Our Lady of Lourdes Reg’l Med. Ctr., Inc., 11-1797, p. 4 (La.5/8/12), 93 So.3d 536, 539. Once the employee makes such a showing, the employer must then prove that the employee is physically able to perform a certain job and that the job was either offered to the employee or that the job was available within the employee’s community or geographic region in order for the employee to be prevented from recovering SEBs. Id. (citing La. R.S. 23:1221(3)(c)(i); Poissenot, p. 5, 56 So.3d at 174; Banks, p. 9, 696 So.2d at 556).
While actual job placement is not required, an employer must prove job availability under La. R.S. 23:1221(3)(c)(i) by showing:
|B(1) [T]he existence of a suitable job within claimant’s physical capabilities and within claimant’s or the employer’s community or reasonable geographic region;
(2) [T]he amount of wages that an employee with claimant’s experience and training can be expected to earn in that job; and
(3) [A]n actual position available for that particular job at the time that the claimant received notification of the job’s existence.
Clay, p. 5, 93 So.3d at 539 (quoting Banks, pp. 10-11, 696 So.2d at 557). If an employer fails to defeat the employee’s claim, his SEBs are determined based on the difference between his pre-injury average monthly wage and his proven post-injury monthly earning capacity. Hall, p. 11, 95 So.3d at 1138 (citing La. R.S. 23:1221(3)(a)).
While defendant would have this Court believe that Dr. Lowder released claimant to work light to sedentary job duties without any restrictions, that was not the full extent of his release. Dr. Lowder stated in his February 2013 letter that claimant’s “[djriving time and daily commuting must be limited to no more than 15 minutes, when he is in a safe condition to drive, to avoid further exacerbation of his injury and escalating the sleep deprivation.” Dr. Lowder further opined that:
Although I believe that Mike may physically tolerate a light sedentary occupation, successful re-employment is unlikely unless the potential employer can tolerate the reduced human performance levels and frequent workday absences due to his chronic pain and sleep deprivation issues.
When Dr. Lowder was asked during his deposition whether he thought Mr. Caram-bat’s sleep and pain issues prevented him from working a sedentary job, he responded: “well, yes, especially if he is falling asleep on the job because he is only getting three to four hours of sleep per night. That doesn’t make more for wise and lucid thinking in any opinion.” However, Dr. Lowder then stated that he |7would have no objection to Mr. Carambat performing a job within his physical limitations that was located in Mandeville, Louisiana. Dr. Lowder later stated that he approved the three jobs for Mr. Carambat based simply *1036 on Mr. Carambat’s physical capabilities and did not take into account his pain or sleep issues.
Mr. Carambat testified to his pain and sleep problems at great length during his deposition. When Mr. Carambat was asked if he was physically capable of performing the jobs that Mr. Johnson recommended, he responded, “I was physically capable of that. But there were other aspects of my injury that had been ignored. It had been confirmed by other Doctors.” Mr. Carambat further testified, “I couldn’t stay awake long enough to do a job ... I had other limitations that would exclude my performance.” Accordingly, it is Mr. Carambat’s contention that while he may have the physical ability for the proposed positions, the medications he takes for his constant pain produce side effects that prevent him from performing any job, even sedentary work.
Additionally, Mr. Carambat testified in his affidavit that the drive time between his residence and Mandeville is about “45-60 minutes during morning work traffic and 60-90 minutes in the afternoon.” Therefore, Mr. Carambat contends that, contrary to the NOPD’s position, a job located in Mandeville is unsuitable because it “considerably exceeds [the] daily commuting driving time limit stated by Dr. Lowder.”
Given the conflicting medical testimony provided by Dr. Lowder, coupled with Mr. Carambat’s testimony and his extensive medical history, we conclude that material factual issues remain as to whether Mr. Carambat’s benefits were correctly converted from TTD to SEBs and if so, whether the reduction was proper; thus, this case was not appropriate for summary judgment.
1 «DECREE
For the foregoing reasons, we find that the trial court erred in granting appellee’s motion for summary judgment because genuine issues of material fact remain. The trial court’s judgment is reversed, and we remand this matter for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.