KUHN, J.
12CIaimant-appellant, Donna Coleman, appeals the judgment of the Office of Workers’ Compensation (OWC), against employer-appellee, Walter Industries, Inc./ Jim Walter Homes (Jim Walter Homes), awarding her indemnity benefits and denying certain medical benefits. Finding the language of that portion of the judgment that denies medical benefits too broad, we amend the judgment. As amended, the OWC judgment is affirmed.
PROCEDURAL BACKGROUND
Claimant filed a disputed claim form in January 2009, subsequent to the termination of certain medical benefits by her employer in December 2008, averring that indemnity benefits had been discontinued in June 2008. Her employer answered, generally denying claimant’s entitlement to further relief. After a hearing on the merits of her claim, OWC concluded that she had sustained a compensable work-related accident on December 31, 2007, and awarded her indemnity benefits through June 29, 2008. OWC denied her claim for continuing medical benefits after December 22, 2008. Claimant appeals asserting entitlement to further medical benefits and to indemnity benefits after June 29, 2008.
MEDICAL BENEFITS
Claimant contends OWC erred in denying her medical benefits subsequent to December 22, 2008. She expressly challenges OWC’s conclusion that the complex regional pain syndrome from which she suffers is not related to her accident.
The injured employee’s right to medical expenses is separate and distinct from her right to disability benefits, and an employer has a statutory duty to furnish all necessary medical treatment caused by a work-related injury. See La. R.S. 23:1203; Bonvillain v. Preferred Indus. and LWCC, 2004-0849, p. 16 (La.App. 1st Cir.5/27/05), 917 So.2d 1, 10. It is the employee’s burden to prove that the ex penses are reasonably necessary for treatment of a medical condition caused by the work injury. See Louisiana Ins. Guar. Ass’n v. Weller, 2007-0571, p. 7 (La.App. 1st Cir.11/2/07), 977 So.2d 29, 34. The question of whether a claimant is entitled to medical benefits is ultimately a question of fact, and OWC’s resolution of that issue may not be disturbed by the appellate *1260 court in the absence of manifest error or unless clearly wrong. Weller, 2007-0571 at p. 7, 977 So.2d at 34.
The evidence establishes that beginning in May 2006, claimant worked in sales at the Hammond office of Jim Walter Homes. On December 31, 2007, she walked into the doorway of the room where the office fax machine was located and, as she maneuvered around her boss who was standing in front of the doorway, claimant hit a four-shelf file cabinet with her left hip. Thinking she had bruised herself, claimant continued working. She testified that the more she worked and walked, the worse the pain became. But she continued working. Finally, on January 31, 2008, she sought medical care at a walk-in clinic after reporting the incident to her employer and at the direction of her employer’s workers’ compensation administrator.
Claimant initially was treated by Dr. Mark Daunis, who took x-rays and issued prescriptions for swelling and pain of her left hip bone. After seeing him three times, she was referred to Dr. B.J. Chais-son, an orthopedist. Unhappy |4with Dr. Chaisson’s treatment, claimant selected Dr. Neils J. Linschoten as her orthopedist. On April 1, 2008, Dr. Linschoten assessed her with post-contusional greater trochan-teric bursitis. Noting claimant’s hypersensitivity and disproportionate level of symptomatology at the bruising site, Dr. Linschoten was concerned that claimant may suffer from reflex sympathetic dystrophy (RSD).
Seeking a second opinion, the workers’ compensation administrator sent claimant to Dr. Joseph E. Broyles, who first examined her on May 23, 2008. He concluded that claimant had arthritis of the left hip as well as significant femoral head contusion. Dr. Broyles testified that the femoral head contusion could have been caused by the December 31, 2007 incident of running into the file cabinet; but noted that it was just as likely that it was caused by arthritis. Whether the event caused the femoral head contusion or aggravated a preexisting condition, Dr. Broyles attributed her pain to the incident in the fax room. Dr. Broyles concurred with Dr. Linschoten’s diagnosis of post-contusional greater trochanteric bursitis. Noting her hypersensitivity to touch, which was not explained by the arthritis and femoral head contusion, Dr. Broyles also suspected claimant may suffer from RSD. Because she was impressed with Dr. Broyles’ treatment, claimant selected him as her choice of physician.
Dr. Broyles continued treating claimant through August 2008. He placed claimant under physical restrictions for work. He had a cortisone steroid preparation injected into claimant’s left hip to address the arthritic component of claimant’s pain and Lidoderm patches and Neurotin to address that attributed to the suspected RSD. Eventually, Dr. Broyles referred claimant to Dr. Jihad George Jiha, |sa specialist in interventional pain management, for treatment associated with the suspected. RSD.
On October 27, 2008, Dr. Jiha first examined claimant. Based on his examination, Dr. Jiha thought claimant may have complex regional pain syndrome (CRPS), testifying that was the name the medical community had replaced for what Dr. Broyles had referred to as RSD. He explained that RSD involved only neuropathic pain of the sympathetic nerve; but because that pain can occur in other nerves as well, the reference was changed.
Based on his limited treatment of claimant, Dr. Jiha opined more probable than not claimant suffered from CRPS as a result of the incident in the fax room. But because much of the information he had been able to garner in the limited treatment he had been able to administer was subjective, he was not 100% certain. He *1261 conceded that other possible diagnoses were local trauma, local sprain, and local contusion. According to Dr. Jiha, CRPS can occur after a severe trauma, a minor trauma, surgery, or without any known stimulus at all. Despite his opinion, Dr. Jiha conceded that CRPS caused by trauma usually happens in less than a month; within a week or two of the event. He stated that CRPS can last between two and four years, indicating that in the majority of those who have it, the pain ultimately goes away. Since claimant had not returned for further treatment after he administered one sympathetic nerve block for which she subjectively reported positive results, he was unable to determine if claimant would respond well to further sympathetic nerve blocks or whether she would be a better candidate for pain relief from a neurolytic sympathetic nerve block.
| ^Although we may have concluded differently had we been the trier of fact, the record supports OWC’s conclusion that the ensuing medical expenses related to the CRPS from which claimant suffers were not expenses reasonably necessary for treatment of a medical condition caused by a work injury. As noted above, claimant’s treating physician, Dr. Broyles, referred her to a specialist, Dr. Jiha. And Dr. Jiha admitted that CRPS can be caused without any known stimulus at all. He also indicated that CRPS usually appears within one or two weeks of a triggering traumatic event. Yet, the record supports a finding that claimant continued to work for a month after she hit the file cabinet with her hip. As such, OWC could have reasonably found that claimant’s CRPS was not caused by the incident of hitting her hip into the file cabinet in the fax room. Thus, a reasonable factual basis exists to support OWC’s determination that the medical condition was one that was not caused by a work injury such that expenses related to its treatment are com-pensable.
We note, however, that the judgment signed by OWC states, that claimant’s “claim for continuing medical benefits subsequent to December 22, 2008 is hereby DENIED.” This language is overly broad. While it is true that at the trial on the merits, the evidence established that the only medical expenses that claimant sought were for treatment related to her CRPS condition, she is nevertheless entitled to all expenses reasonably necessary for treatment of a medical condition caused by the work injury. Thus, to avoid misinterpretation of the scope of the denial of her claim, we amend the judgment to state:
IT IS FURTHER ORDERED that Donna. B. Coleman’s claim for medical benefits related to her CRPS (RSD) condition is hereby DENIED.
_JjSee La. C.C.P. art. 2164 (providing that the appellate court shall render any judgment which is just, legal, and proper upon the record on appeal).
INDEMNITY BENEFITS
In her challenge of OWC’s award of benefits from March 17, 2008 to June 29, 2008, claimant contends that the sales position offered to her by “Jim Walter Homes” in a letter dated June 24, 2008 was one that, in fact, violated the restrictions placed upon her by her doctors.
A claimant who seeks workers’ compensation indemnity benefits on the basis of being disabled must prove — without taking pain into consideration — that she is unable to engage in any employment or self-employment. See La. R.S. 23:1221; see also Springfield, v. Wal-Mart No. 1266, 2001-2543, p. 7 (La.App. 1st Cir.11/8/02), 835 So.2d 736, 740 (addressing a claim of entitlement to temporary total disability indemnity benefits).
*1262 It is undisputed that both Dr. Broyles and Dr. Linschoten restricted claimant’s work duty. Particularly, she was to: not walk in excess of fifty yards at a time; be provided frequent opportunities to alternate standing and sitting as necessary to tolerate pain; and not be required to climb, bend, stoop, or lift more than ten pounds. Both Dr. Broyles and Dr. Lin-schoten were provided a job description of the light duty position offered to claimant, and each signed a form indicating his respective approval.
The letter sent to claimant on June 24, 2008, stated, “[The workers’ compensation administrator] has received notification from your doctor releasing you to work a light duty position as an inside sales representative.” It further | Sadvised, “We currently have a sales position available for you in our Hammond, LA office that is within your physical restrictions.”
At trial, claimant admitted that in June 2008, she received an offer from her employer of “supposedly some type of light or lighter [duty] employment.” She said that she did not accept the job or return to work because she could not. She described that she was in too much pain walking or sitting. She stated that she knew she would have to climb steps and walk the sales lot. With her pain, she testified, she just was not able to do those things.
Although claimant had worked in a sales position with Jim Walter Homes before her injury, she never attempted to work in the modified position her employer offered her. Thus, Jim Walter Homes never required her to do any job duties in derogation of those described to her physicians. As such, she was not entitled to refuse to return to work on that basis. See Springfield, 2001-2548 at p. 9, 835 So.2d at 741; see also Callahan v. Wayne Matthews Constr., 2001-0129, p. 4 (La. App. 1st Cir.2/15/02), 807 So.2d 1197, 1199 (an employee is not entitled to collect indemnity benefits when the treating physician has opined that the claimant is physically able to engage in light duty employment, but the claimant refuses to do so). Accordingly, we find no error in OWC’s award of indemnity benefits through. June 29, 2008.
In an alternate contention, claimant suggests that she is entitled to supplemental earnings benefits (SEB) commencing from January 2009, the date claimant testified that Jim Walter Homes closed its Hammond office.
The purpose of SEB is to compensate the injured employee for wage earning capacity she has lost as a result of an accident. La. R.S. 23:1221(3)(a) |aprovides that SEB shall be paid “[f]or injury resulting in the employee’s inability to earn wages equal to ninety percent or more of wages at time of injury.”
The claimant in a SEB case bears the initial burden of proving by a preponderance of the evidence that a work-related injury resulted in her inability to earn that amount under the facts and circumstances of the individual case. Carral v. Winn-Dixie Louisiana, Inc., 2005-1482, pp. 3-4 (La.App. 1st Cir.6/9/06), 938 So.2d 799, 801. A claimant is not entitled to SEB when her inability to earn wages equal to ninety percent of her pre-injury wages is due to circumstances other than her work-related injury. Id., 2005-1482 at p. 4, 938 So.2d at 801. The findings of fact and the determination of whether a claimant has satisfied her burden of proof in a workers’ compensation case are considered on appeal under the manifest error standard of review. Id.
By her own admission, claimant’s inability to work for Jim Walter Homes in Hammond is due to the closure of its office ostensibly for economic reasons. Claimant *1263 offered no evidence of her inability to earn wages equal to ninety percent or more of wages at time of injury. As such, OWC was not manifestly erroneous in rejecting this claim.
DECREE
For these reasons, OWC’s judgment is amended as provided herein. As amended, the judgment is affirmed. Appeal costs are assessed against claimant-appellant, Donna B. Coleman.
AMENDED AND, AS AMENDED, AFFIRMED.