# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-471


VALERIE FABACHER

VERSUS

STINE, INC.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 4
PARISH OF ACADIA, NO. 10-03688
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

## JIMMIE C. PETERS
## JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and John E. Conery, Judges.


**AFFIRMED IN PART AS AMENDED;
REVERSED IN PART; AND RENDERED.**



Saunders, J., concurs in the result.



**Michael B. Miller**
**Jacqueline B. Manecke**
**P. O. Drawer 1630**
**Crowley, LA 70527-1630**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Valerie Fabacher**

**Matthew P. Keating**
**Christopher P. Ieyoub**
**Plauche, Smith & Nieset, LLC**
**P. O. Drawer 1705**
**Lake Charles, LA 70602-1705**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Stine, Inc.**

**PETERS, J.**

The defendant, Stine, Inc. (Stine), appeals from a judgment awarding the plaintiff, Valerie Fabacher, supplemental earnings benefits, multiple penalties, and attorney fees. The plaintiff answered this appeal, seeking additional attorney fees for work performed on appeal. For the following reasons, we affirm in part as amended, reverse in part, and render judgment.

## DISCUSSION OF THE RECORD

On March 13, 2010, Mrs. Fabacher, who was employed by Stine in the Garden Center section of its Crowley, Louisiana store, sustained a work-related injury to her lower back. She was unloading Windsor wall blocks from a delivery truck when, midway through the unloading process, she experienced a burning sensation down her right leg. Mrs. Fabacher immediately reported the accident to her supervisor, Jeri Landry, but continued working until the end of her shift. She first obtained medical attention for her injury two days later when she saw her family physician, Dr. Carl J. Richard. Dr. Richard, a general practitioner who practices in Kaplan, Louisiana, diagnosed Mrs. Fabacher as suffering from sciatica of her right leg and restricted her from working indefinitely.

The next day, March 16, 2010, Stine arranged for Mrs. Fabacher to be seen by its physician, Dr. Yarmen Korab. Dr. Korab, a Crowley, Louisiana general practitioner, also diagnosed Ms. Fabacher as suffering from acute sciatica, in addition to low-back pain, and treated her with medication. When Mrs. Fabacher next saw Dr. Korab on March 30, 2010, her low-back pain had increased and she had begun to suffer weakness in her right leg. Dr. Korab ordered that a diagnostic MRI be obtained and excused Mrs. Fabacher from working through at least April 21, 2010. The MRI, which was performed on March 30, or the same day as the

follow-up visit, revealed a large disc herniation at the right, mediolateral aspect of L5-S1, with some effusion of the upper fragment noted interiorly. After reviewing these findings, on April 5, 2010, Dr. Korab recommended that Mrs. Fabacher see a neurosurgeon prior to any attempt to return to work. When her April 20, 2010, return visit reflected that her symptoms were unchanged, Dr. Korab recommended that she see a neurosurgeon as soon as possible.

Mrs. Fabacher acted on Dr. Korab's recommendation and obtained an appointment with Dr. Luiz C. de Araujo, a Lafayette, Louisiana neurosurgeon, on June 28, 2010. Dr. de Araujo's initial examination of Mrs. Fabacher caused him to conclude that her symptoms were consistent with a disc herniation at L5-S1. The March 30, 2010 MRI confirmed Dr. Araujo's initial diagnosis of a large disc herniation at that level, and he recommended that she treat the condition with physical therapy, anti-inflammatory medications, and muscle relaxants. Although Dr. de Araujo recommended that she not return to work, he agreed to release Mrs. Fabacher to light duty work at her request. However, in a June 28, 2010 letter to Dr. Richard, he stated that Mrs. Fabacher was not fit for duty.

Stine then scheduled Mrs. Fabacher for a second medical opinion (SMO) with Dr. Ricardo R. Leoni, a Lafayette neurosurgeon, on July 15, 2010. Three days before the scheduled appointment with Dr. Leoni, Mrs. Fabacher saw Dr. de Araujo for a follow up visit. When she saw Dr. de Araujo on July 12, 2010, physical therapy had yet to be approved by Stine or its workers' compensation carrier. This failure to approve the recommended medical treatment created problems for Dr. de Araujo in addressing the complaints of his patient because he considered the physical therapy treatment a necessary next step before he could further evaluate Mrs. Fabacher.

2

Mrs. Fabacher failed to keep the July 15, 2010 appointment with Dr. Leoni, on the advice of her counsel, and Stine rescheduled it for August 17, 2010. After examining Mrs. Fabacher on that day, Dr. Leoni noted numbness in the S-1 distribution, weakness in the dorsiflexion of her foot, and an absent right ankle jerk. He suggested that he normally recommends microdiscectomy surgery for patients with those symptoms, and he expressed a concern that the lost function and weakness in Mrs. Fabacher's right foot might be permanent given the presence of the symptoms for several months. Finally, he expressed a belief that Mrs. Fabacher would reach maximum medical improvement (MMI) in three to four months. At the time he examined Mrs. Fabacher, Dr. Leoni was of the opinion she was capable of performing sedentary to light-duty work so long as that work did not require lifting of anything greater than ten to fifteen pounds.

Sometime after her July 12, 2010 visit to Dr. de Araujo, Mrs. Fabacher began receiving physical therapy treatments, and she responded well to those treatments. When she returned to Dr. de Araujo on September 13, 2010, he found that her condition was much improved in that she could walk and move much better than before. However, based on her occasional complaints of radicular pain, he recommended continued physical therapy for several more weeks.

When Mrs. Fabacher returned for an office visit on October 11, 2010, Dr. de Araujo found that his patient was virtually symptom free. Based on this finding, he released her to return to medium-duty work. On November 8, 2010, Dr. de Araujo responded to an October 27, 2010 letter from Martha Raines, a nurse care manager retained by Stine's workers' compensation administrator, Gallagher

Bassett Services, Inc. (Gallagher), wherein he asserted that he believed Mrs. Fabacher could perform the light-duty obligations of a customer coordinator.[1]

When Mrs. Fabacher returned to Dr. de Araujo on November 22, 2010, she had yet to return to work in any capacity, and she advised the doctor that she still suffered from occasional episodes of right-leg pain. Although Dr. de Araujo was still of the opinion that Mrs. Fabacher could return to work with restrictions, he did not believe she had reached her MMI level. He planned to reevaluate her approximately six weeks into her medium-duty work and, if she was doing well, to have her undergo a functional capacity evaluation in order to determine her work level. He still believed that at some point she would reach MMI, but did acknowledge that there was a possibility her condition would worsen. If it did, she would be a candidate for surgery.

During the early period of Mrs. Fabacher's medical treatment, and despite the uncontroverted findings of the doctors treating her, Stine did not begin timely paying workers' compensation benefits. Mrs. Fabacher first made demand on her employer for workers' compensation benefits and related expenses by correspondence from her attorney dated April 21, 2010. The next day, she filed a disputed claim for compensation citing Stine's failure to pay indemnity benefits and its refusal to authorize her referral to Dr. de Araujo by Dr. Korab. Based on the actions and/or inactions of Stine, she sought statutory penalties, attorney fees, and legal interest on the amounts that might be awarded to her. After receipt of a second demand letter from Mrs. Fabacher's attorney dated June 29, 2010, Stine finally responded by tendering payment for some claimed benefits. This came in

---

[1] The duties of a customer coordinator were defined in an attachment to Ms. Raines' correspondence. Mrs. Fabacher suggested that the position entailed greeting customers, asking them if they needed help, and directing them to the appropriate area of the store.

the form of a July 16, 2010 check to Mrs. Fabacher in the amount of $4,576.32 issued by Gallagher. The amount represented temporary total disability benefits (TTD) covering the period from March 15 through July 18, 2010. However, three days later, Glynda Pino, Gallagher's claims adjustor assigned to this claim, terminated Mrs. Fabacher's TTD effective July 19, 2010.

Ms. Pino took this termination action based on Mrs. Fabacher's failure to appear at the July 15, 2010 medical appointment with Dr. Leoni, and her failure to return to work within twenty-four hours of her release to light-duty work by Dr. de Araujo on June 28, 2010. According to Ms. Pino, this latter reason was based on an internal company policy to that effect, said policy being set forth in Stine's associate handbook. At the point she made this decision, she was not aware of the reason Mrs. Fabacher failed to appear, and she could not say if Stine had even offered Mrs. Fabacher a position, much less one that had been approved by her treating physician.[2]

In her trial testimony, Ms. Pino pointed to Dr. Leoni's August 17, 2010 opinion that Mrs. Fabacher could perform sedentary/light-duty work as additional support for her actions. She testified that pursuant to Stine's associate handbook, Mrs. Fabacher was required to return to work within twenty-four hours of her release from the physician's care or have her employment terminated. Again, as was the case the month before, the record contains no evidence that a position existed for Mrs. Fabacher.

---

[2] Ms. Pino suggested that a letter had been sent to Mrs. Fabacher instructing her to return to work within two weeks of July 12, 2010. However, she could not identify who sent the letter or whether Mrs. Fabacher received it. The record does not contain a copy of this letter, and Mrs. Fabacher denies having received it.

Mrs. Fabacher did receive a written offer to return to work from Stine, but in November and not July of 2010. On November 9, 2010, Diane Soileau, Stine's Executive Assistant, notified Mrs. Fabacher by letter that her doctor had approved a modified position for her as a customer coordinator and that she should report for work at the Crowley, Louisiana store on the morning of November 23, 2010. Ms. Soileau forwarded this letter based on information received from a nurse case worker, who informed her that Mrs. Fabacher had been released to restricted duty. Mrs. Fabacher did not report for work on November 9, 2010, nor did she inform Stine that she would not report. A second letter from Ms. Soileau dated December 18, 2010, instructed her to return to work on December 29, 2010, and she complied with that instruction. From that day through the trial of this matter, Mrs. Fabacher has continuously worked as a customer coordinator at Stine's Crowley, Louisiana store at her pre-injury wage of ten dollars per hour. However, since returning to work, she has worked less than forty hours per week due to a company-wide reduction in employee hours.

This matter proceeded to a trial on the merits, which took place over three days: May 11, 2011; September 28, 2011; and October 4, 2011. During the trial, the parties entered into the following stipulations:

1. Mrs. Fabacher was employed by Stine on March 13, 2010, the date of her work-related accident.

2. Mrs. Fabacher sustained a work-related accident on March 13, 2010.

3. Mrs. Fabacher reported her work-related accident to paint department manager, Jeri Landry, on March 13, 2010.

4. Mrs. Fabacher's weekly wage as of March 13, 2010, was $429.00.

6

5.  Stine did not commence paying weekly indemnity benefits to Mrs. Fabacher within fourteen days of the date of the accident, in violation of La.R.S. 23:1201(B).  Due to the length of time, claimant is entitled to statutory maximum penalty of $2,000.00 pursuant to La.R.S. 23:1201(F).

6.  Stine did not timely authorize and/or guarantee treatment with Dr. Carl Richard, in violation of La.R.S. 23:1201(E).  Due to the length of time, Mrs. Fabacher is entitled to the statutory maximum penalty of $2,000.00 pursuant to La.R.S. 23:1201(F).

7.  Stine did not timely reimburse Mrs. Fabacher for her $115.00 out-of-pocket medical expenses for medical treatment with Dr. Carl Richard.  Due to the length of time, claimant is entitled to the statutory maximum penalty of $2,000.00 pursuant to La.R.S. 23:1201(F).

8.  Stine did not timely provide Mrs. Fabacher with a copy of the medical report of Dr. Korab, in violation of La.R.S. 23:1125, thus entitling Mrs. Fabacher to the fixed penalty of $250.00.

At the close of evidence, the workers' compensation judge (WCJ) took the matter under advisement.  On December 27, 2012, the WCJ rendered reasons for judgment on the remaining issues, finding:  that Mrs. Fabacher was entitled to supplemental earnings benefits (SEB) from July 18 through December 29, 2010, based on a zero earning capacity; that Mrs. Fabacher was also entitled to SEB from December 29, 2010 forward, for any period that she earned less than ninety percent of her pre-injury wages; that Mrs. Fabacher was entitled to a post-judgment penalty of $3,000.00, based on Stine's failure to pay the stipulated penalties within thirty days of the stipulation; and awarding Mrs. Fabacher a total of $15,000.00 in attorney fees for the various penalty issues before it.  The WCJ reduced the stipulations and reasons for judgment to a written judgment on January 11, 2013.

Stine perfected a partial suspensive appeal from the WCJ judgment, raising five assignments of error:

(A)  The Trial Court erred as a matter of law in finding that employer's termination of benefits effective July 18, 2010 was

7

arbitrary and capricious, and/or without probable cause, and awarding penalties and attorney fees under 23:1201(I) as a result of same;

(B)    The Trial Court erred as a matter of law in awarding temporary total disability benefits to claimant for the period of July 18, 2010 to December 29, 2010;

(C)    The Trial Court erred as a matter of law in awarding claimant supplemental earnings benefits for the period December 29, 2010 to present;

(D)    The Trial Court erred as a matter of law in awarding post-judgment penalties for employer's non-payment of stipulated amounts within 30 days of making the stipulations on the record; and

(E)    The Trial Court erred as a matter of law in awarding an excessive attorney fee award to claimant for stipulated penalties under 23:1201(B), 23:1201(F) and 23:1125.

Mrs. Fabacher answered Stine's appeal, requesting additional attorney fees for work performed by her counsel in defending this appeal.

## OPINION

Factual findings in workers' compensation cases are reviewed on appeal pursuant to the same standard of review applied in tort cases, the manifest error—clearly wrong standard:

> [F]actual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dept. of Corrections*, 93-1305 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman, supra* at 737-38; *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). "In determining whether a [WCJ's] finding that an employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine all evidence that bears upon the employee's inability to earn 90% or more of his pre-injury wages." *Seal v. Gaylord Container Corp.*, 97-0688 (La.12/2/97), 704 So.2d 1161, 1166.

*Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793, p. 6 (La. 1/9/11), 56 So.3d 170, 174 (first alteration ours).

Furthermore, a legal error by the WCJ presents a question of law, which is reviewed by determining whether the WCJ's ruling is legally right or wrong. *LeBlanc v. Lafayette Consol. Gov't*, 07-1608 (La.App. 3 Cir. 5/28/08), 983 So.2d 1022.

### Analysis of the First Three Assignments of Error

In these assignments of error, Stine argues that the WCJ erred in finding that it acted arbitrarily and capriciously in terminating Mrs. Fabacher's TTD on July 18, 2010; in awarding her TTD for the period between July 19, 2010, and December 28, 2010;[3] in awarding her SEB from December 29, 2010 forward; and in awarding her statutory penalties and attorney fees pursuant to La.R.S. 23:1201(I).

With regard to the statutory penalty issue, we first note that La.R.S. 23:1201(I) provides:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:1892(C) shall be applicable to claims arising under this Chapter.

Any "willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation" is arbitrary and capricious behavior. *Lewis v. Temple Inland*, 11-729, pp. 6-7 (La.App. 1 Cir. 11/9/11), 80 So.3d 52, 58. Thus, any action taken by the employer against the

---

[3] We note that the WCJ awarded Mrs. Fabacher SEB and not TTD for this period, and we will consider this assignment of error from that prospective.

employee's best interest is considered arbitrary and capricious, and the critical inquiry in determining whether the employer's actions were arbitrary and capricious is whether the employer articulated an objective reason for its actions at the time it discontinued the benefits. *Id.*

With regard to the TTD issue, we note that the award of such benefits is appropriate once an employee proves, by clear and convincing evidence, unaided by any presumption of disability, that he or she is physically unable to engage in any employment as a result of a work-related injury. La.R.S. 23:1221(1). Disability is proven by medical and/or lay testimony, and the WCJ must weigh all evidence in determining whether the employee has satisfied her burden of proof. *Jack v. Prairie Cajun Seafood Wholesale*, 07-102 (La.App. 3 Cir. 10/3/07), 967 So.2d 552, *writ denied*, 07-2388 (La. 2/15/08), 976 So.2d 178. A disability finding is a factual determination and is reviewed pursuant to the manifest error standard of review. *Id.*

Considering the SEB issue, the law is clear that an employee who can perform light-duty or even sedentary work is not entitled to TTD. *Hall v. MacPapers, Inc.*, 11-1548 (La.App. 4 Cir. 5/30/12), 95 So.3d 1131.

> "The purpose of [SEBs] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La.7/1/97), 696 So.2d 551, 556. An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Banks*, *supra* at 556. "In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005, 1009 (La.1989) (quoting *Gaspard v. St. Paul Fire and Marine Ins. Co.*, 483 So.2d

10

1037, 1039 (La.App. 3 Cir.1985)). It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee's community or reasonable geographic location. La. R.S. 23:1221(3)(c)(i); *Banks*, *supra* at 556; *Daigle*, *supra* at 1009.

The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage. *Daigle*, *supra* at 1007. Further, factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dept. of Corrections*, 93-1305 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman*, *supra* at 737-38; *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). "In determining whether a [WCJ's] finding that an employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine all evidence that bears upon the employee's inability to earn 90% or more of his pre-injury wages." *Seal v. Gaylord Container Corp.*, 97-0688 (La.12/2/97), 704 So.2d 1161, 1166.

*Poissenot*, 56 So.3d at 174-75 (footnote omitted) (alteration in original).

However, if the employee's inability to earn ninety percent of her pre-injury wages is due to "circumstances other than her work-related injury[,]" she is not entitled to SEB. *Coleman v. Walter Indus., Inc./Jim Walter Homes*, 10-1145, p. 9 (La.App. 1 Cir. 2/11/11), 56 So.3d 1258, 1262.

In considering Stine's first assignment of error, we note that Ms. Pino gave two reasons for the termination of benefits effective July 18, 2010: (1) Mrs. Fabacher's failure to appear at the July 15, 2010 SMO with Dr. Leoni; and (2) Mrs. Fabacher's failure to return to work within twenty-four hours after being released

to light-duty work by Dr. de Araujo.[4] We find no merit in Stine's reliance on either of these reasons.

Louisiana Revised Statutes 23:1124 does provide that an employee's indemnity benefits will be suspended if he or she refuses to submit to an examination by the employer's choice of physician and shall not recommence until the disputed examination occurs. However, the suspension of benefits is not automatic. Rather, the suspension only occurs after the WCJ determines that the proposed examination is reasonable as to "time, place, and circumstances." *Atwell v. First Gen. Servs.*, 06-392, p. 11 (La.App. 1 Cir. 12/28/06), 951 So.2d 348, 356, *writ denied*, 07-126 (La. 3/16/07), 952 So.2d 699. In this case, Stine sought no hearing before the WCJ to determine the reasonableness of the examination date, and the benefits were terminated unilaterally by Ms. Pino.

With regard to Mrs. Fabacher not timely returning to work after being released by Dr. de Araujo, the medical evidence establishes that although Dr. de Araujo released Mrs. Fabacher for light-duty work on June 28, 2010, he did so at her specific request. However, the doctor did not consider her capable of returning to work in any capacity at that time, and he advised her against it. The first medical evidence that suggests Mrs. Fabacher could return to work in any capacity was Dr. Leoni's August 17, 2010 opinion.

Given the record before us, we find no error in the WCJ's determination that Stine was arbitrary and capricious in terminating Mrs. Fabacher's workers' compensation benefits effective July 18, 2010. Thus, we find no merit in Stine's first assignment of error.

---

[4] Her third reason for terminating benefits, Dr. Leoni's August 17, 2010 opinion that Mrs. Fabacher could perform sedentary/light–duty work, cannot be relied on by Stine as it occurred almost one month after benefits were terminated.

Next, Stine asserts that the WCJ erred in awarding SEB[5] at a zero base for the period from July 18, 2010 through December 29, 2012. We find no merit in this assignment of error, as well.

The medical evidence establishes that Dr. de Araujo saw Mrs. Fabacher on July 12, 2012, and concluded that she was still unable to return to even light-duty work at that time. In fact, at this point, Stine had yet to authorize physical therapy. As previously stated, Dr. Leoni concluded, after his August 17, 2010 examination, that Mrs. Fabacher could perform sedentary or light-duty work. Dr. de Araujo finally reached the determination that Mrs. Fabacher could perform medium-duty work after he examined her on October 11, 2010. Thus, only as of August 17, 2010, does the medical evidence support a finding that Mrs. Fabacher was no longer entitled to TTD. *Hall*, 95 So.3d 1131.

Concerning her inability to earn ninety percent or more of her pre-injury wages during the period in question, Mrs. Fabacher testified at trial that she is still under Dr. de Araujo's care, awaiting his release, and that since sustaining her work-related injury, her activities have diminished; she suffers from a slight drop in her right foot; her back hurts if she stands in one place too long; and that she is still incapable of doing anything involving lifting. We find no error in the WCJ's determination that this evidence satisfied the prima facie case requirement set forth in *Hall*.

Once Mrs. Fabacher established her prima facie case, the burden shifted to Stine to establish that during the time period at issue, Mrs. Fabacher was able to

---

[5] Erroneously referred to in the second assignment of error as TTD.

perform a specific job and that such a job had been offered to her in the community or other reasonable geographic location. *Id.*

The record reflects that prior to the November 9, 2010 letter from Ms. Soileau instructing Mrs. Fabacher to report to work on November 23, 2012, Mrs. Fabacher received no offer of employment from Stine. However, that letter was insufficient in that it did not contain a description of the duties associated with the position being offered nor did it show that Dr. de Araujo had approved the position. Furthermore, there exists no evidence in the record to establish that Mrs. Fabacher was aware of the duties or Dr. de Araujo's approval of the position.[6] The content defects of the November 9, 2010 letter were cured by the December 18, 2010 letter, and Mrs. Fabacher responded by reporting to work as instructed on December 29, 2010.

Stine also relies on the provision in the associate handbook, which requires an employee to report to work within twenty-four hours of being released to work. Failure to do so would, according to the manual, constitute a voluntary resignation from employment. Thus, Stine asserts that when Mrs. Fabacher failed to report for work within twenty-four hours of Dr. Leoni's August 17, 2010 conclusion, she voluntarily terminated her employment and forfeited her right to SEBs.

The specific provision of the employee manual states, "Failure to return to work within 24 hours of release from Workers' Compensation leave or release to 'light duty' will be considered a voluntary resignation." The Associate Acknowledgement Form, signed by Mrs. Fabacher on November 5, 2007, acknowledges that she received or had access to the manual and that it was her

---

[6] In her testimony, Mrs. Fabacher denied ever receiving a copy of the job description for the position of customer coordinator or of ever having a discussion with Dr. de Araujo wherein he informed her that he had approved the position for her.

14

responsibility to know and comply with its policies.  However, it further states that the employee manual is neither a contract of employment nor a legal document.  Accordingly, we find that Stine could not rely on the policy at issue for finding that Mrs. Fabacher was not entitled to indemnity benefits.

While we find that the WCJ did not err in awarding Mrs. Fabacher TTD for one period and SEB based on a zero earning capacity for another period, we do find that the time periods at issue must be adjusted to conform to the medical evidence presented at trial.  The first medical finding that Mrs. Fabacher was capable of performing work at any level came with Dr. Leoni's opinion on August 17, 2010.  Therefore, we find that Mrs. Fabacher was entitled to TTD benefits through August 17, 2010, and not July 18, 2010; and that she was entitled to SEB from August 18, 2010, and not July 19, 2010, through December 29, 2010, the date she returned to her employment with Stine.

With regard to its third assignment of error, Stine asserts that the WCJ erred in awarding SEB from December 29, 2010 forward.  Stine points out that Mrs. Fabacher has earned her pre-accident hourly wage of $10.00 since returning to work, and the reason she now works only thirty-five hours per week instead of her previous forty hours per week arises from an across-the-board cutback of all employees for financial reasons.  We find merit in this argument.

The evidence in the record is undisputed that in early 2011, Stine reduced the hours of all employees to avoid layoffs.  Mrs. Fabacher's return to work corresponded to this cutback, and her reduced hours had nothing to do with her ability to perform her duties.  This circumstance, unrelated to her work-related injury, caused her inability to earn ninety percent of her pre-injury wages, and she is not entitled to SEB subsequent to December 29, 2010.  *Coleman*, 56 So.3d 1258.

15

*Analysis of the Fourth Assignment of Error*

In this assignment of error, Stine argues that the WCJ erred in awarding Mrs. Fabacher post-judgment penalties based on its failure to pay the stipulated penalties within thirty days of entering the stipulations. We agree.

Louisiana Revised Statutes 23:1201(G) provides:

> If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.

"A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law. Such agreements are the law of the case." *R.J. D'Hemecourt Petroleum Inc. v. McNamara*, 444 So.2d 600, 601 (La.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92 (1984) (citations omitted).

The facts relating to this issue arise from the stipulations entered into by the parties on the second day of trial, September 28, 2011. However, the trial was not completed that day and was continued until October 4, 2011. On that day, the evidentiary record was completed and the WCJ took the matter under advisement. In her December 27, 2012 reasons for judgment, the WCJ noted that Mrs. Fabacher requested that a post-judgment penalty be assessed against Stine for its failure to pay the stipulated penalties within thirty days of September 28, 2011. The WCJ awarded Mrs. Fabacher a post-judgment penalty of $3,000.00.

We find that the WCJ legally erred in awarding this penalty. Louisiana Revised Statutes 23:1201(I) provides that a "final, nonappealable judgment" triggers the running of the thirty day period. Although the stipulations had the effect of a judicial confession and were binding on Stine, they did not become a part of a final, nonappealable judgment until they and the WCJ's other findings were reduced to writing and rendered by the WCJ as part of her December 27, 2012 judgment. Accordingly, the judgment of the WCJ awarding Mrs. Fabacher a post-judgment $3,000.00 penalty is reversed.

### *Analysis of the Fifth Assignment of Error*

In its final assignment of error, Stine does not dispute the time Mrs. Fabacher's attorneys worked on her case at the trial level or the hourly rate credited to that time. Instead, Stine argues that a $15,000.00 attorney fee award in conjunction with the stipulated penalties under La.R.S. 23:1201(B), La.R.S. 23:1201(F), and La.R.S. 23:1125 is excessive.

Stine bases its argument partly on the assumption that this court will find that it did not improperly terminate Mrs. Fabacher's indemnity benefits and that it was not late in paying the stipulated penalties, and it relies primarily on this court's holding in *Monceaux v. Tosco Marketing Company*, 01-1019 (La.App. 3 Cir. 12/12/01), 801 So.2d 614, *writ denied*, 02-104 (La. 3/28/02), 811 So.2d 944. In *Monceaux*, the plaintiff had requested $10,875.00 in attorney fees based on eighty-seven hours of work at $125.00 per hour, and the WCJ limited the award to $3,500.00. It did so based on the fact that the primary dispute in the litigation was between two insurers over who was liable and that the only issue reasonably controverted was the wage calculation. Thus, the WCJ based the award on the single issue not reasonably controverted. This court affirmed the WCJ judgment,

17

finding that the WCJ was not "clearly wrong in limiting counsel's compensation to the work he performed in connection with the arbitrary conduct which gave rise to the assessment of attorney's fees." *Id.* at 619. In reaching that conclusion, this court stated the following:

> We have considered several rules of law in deciding this case: 1) Each case must be decided on its owns [sic] facts; 2) Statutes which are penal in nature must be strictly construed; and 3) The rule governing the appellate review of workers' compensation cases as set out by this court in *Desselle v. The Oaks Care Center*, 01-0044, p. 4 (La.App. 3 Cir. 5/2/01); 787 So.2d 500, 502, *writ denied*, 01-1193 (La. 4/25/01); 790 So.2d 646:
>
>> An appellate court may not set aside the factual findings of a workers' compensation judge in the absence of a manifest error or unless it is clearly wrong. *Wackenhut Corrections Corp. v. Bradley*, 96-796 La.App. 3 Cir. 12/26/96); 685 So.2d 661. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. The workers' compensation judge has great discretion in an award of attorney's fees and penalties, and his or her discretion will not be disturbed unless it is clearly wrong. *George v. M & G Testing and Services, Inc.*, 95-31 (La.App. 3 Cir. 7/19/95); 663 So.2d 79, *writ denied*, 96-0039 (La.3/8/96); 669 So.2d 403.

*Id.* at 614-15.

In the recent case of *Magbee v. Federal Express*, 12-77 (La.App. 3 Cir. 12/12/12), 105 So.3d 1048, this court again addressed the issue of whether the statutory attorney fee should be based on only the time spent on the penalty-related issues or on the entire litigation, and concluded that the supreme court decision in *McCarroll v. Airport Shuttle, Inc.*, 00-1123 (La. 11/28/00), 773 So.2d 694, required the latter remedy. In *McCarroll*, the supreme court stated the following:

> In our determination of the respective rights of the employee and the attorney to the statutory attorney fees, a persuasive factor is the methodology used to calculate the amount of the statutory attorney fees. The only limitation on the amount is the reasonableness of the

18

fee awarded by the judge. *Cain* [*v. Employers Cas. Co.*, 236 La. 1085, 110 So.2d 108 (1959)]. The amount awarded rests within the discretion of the workers' compensation judge, as long as that amount is supported by the record. Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case. H. Alston Johnson, III, [Louisiana Civil Law Treatise: Workers' Compensation Law and Practice] § 389 [(3rd ed.1994)]. *The amount awarded is intended to provide full recovery, without statutory limitation, for attorney's services and expenses in connection with the litigation.* If the attorney were allowed to collect the contractual attorney fees in addition to the full compensation awarded in the statutory attorney fees, the attorney would get double recovery (to the extent of the limited contractual fee) for his services, at the expense of his client.

We therefore conclude that the statutory attorney fees, awarded to the employee in cases of arbitrary behavior of the employer or the insurer, were intended to benefit the employee, who would otherwise have to pay the contractual attorney fees out of his or her benefits recovered in the litigation, and were not intended to provide additional fees to the employee's attorney, who received the amount of the statutory attorney fees as full compensation for legal services in the litigation.

*Id.* at 700 (emphasis added).

Thus, we reject Stine's argument that the attorney fee award should be limited to only the time spent on the penalty issues. Mrs. Fabacher was successful on every issue that arose at trial. On appeal, the only issue on which she did not prevail involved the award of SEB subsequent to her return to work on December 29, 2010.[7] Based on the supreme court's holding in *McCarroll*, our holding in *Magbee*, and the great discretion accorded a WCJ in awarding attorney fees, we find no abuse of discretion in the award of attorney fees. However, the WCJ's calculation of the fee was based on its conclusion that Mrs. Fabacher was entitled to recover SEBs from December 29, 2010 forward, and as previously stated, we

---

[7] The issue of the post-judgment penalty for the failure to pay the stipulated amounts within thirty days of the stipulations arose after the conclusion of the trial on the merits and the prior to the WCJ issuing her reasons for judgment.

find that conclusion to be in error. Had the WCJ's attorney fee award included time for an issue wherein Mrs. Fabacher was unsuccessful at the trial level, such an award would have been an abuse of discretion. Thus, our review of the record without considering that issue causes us to conclude that the record only supports an award of $12,000.00. *Minor v. J & J Carpet, Inc.*, 10-45 (La.App. 3 Cir. 6/2/10), 40 So.3d 434.

### *Mrs. Fabacher's Answer to the Appeal*

In the final issue before us, Mrs. Fabacher requests that we award her additional attorney fees for the work performed by her counsel in defending this appeal. Considering that she has been generally successful in the defense of her judgment on appeal, we find that she is entitled to additional attorney fees, and we award her an additional $5,000.00 in attorney fees.

### DISPOSITION

For the foregoing reasons, we render judgment awarding Mrs. Fabacher TTD from July 19 through August 17, 2010; we amend the WCJ judgment to award Mrs. Fabacher SEB, at a zero earning capacity, from August 18 through December 29, 2010; we reverse the WCJ judgment awarding Mrs. Fabacher $3,000.00 in post-judgment penalties and the award of SEB subsequent to December 29, 2010; and we affirm in all other respects. We further award Mrs. Fabacher an additional $5,000.00 in attorney fees for work performed on appeal. The costs of this appeal are assessed to Stine, Inc.

**AFFIRMED IN PART AS AMENDED; REVERSED IN PART; AND RENDERED.**