STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-1219

GLORIA CLAY

VERSUS

OUR LADY OF LOURDES REGIONAL MEDICAL CENTER, INC.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 06-03500
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

ON REMAND
**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.

**AFFIRMED IN PART ON REMAND.**

Philip E. Roberts
Leake & Anderson, L.L.C.
P. O. Drawer Z
Lafayette, LA 70502
Telephone: (337) 233-7430
COUNSEL FOR:
        Defendant/Appellee - Our Lady of Lourdes Regional Medical Center, Inc.

Michael Benny Miller
Miller & Miller
P. O. Drawer 1630
Crowley, LA 70527-1630
Telephone: (337) 785-9500
COUNSEL FOR:
        Plaintiff/Appellant - Gloria Clay

**OPINION ON REMAND**

**THIBODEAUX, Chief Judge.**

The claimant/appellant, Gloria Clay, brought a workers' compensation claim against her employer, defendant/appellee, Our Lady of Lourdes Regional Medical Center, Inc. (Lourdes), for injury to her back while lifting solution supplies. Following surgery, a rehabilitation counselor provided information regarding potential employers. Ms. Clay applied for but did not obtain employment. The Office of Workers' Compensation (OWC) terminated her benefits. Ms. Clay appealed the termination of benefits and the calculation of her average weekly wage (AWW).

We found that Ms. Clay had attempted to obtain all positions suggested and that the OWC had applied an overly restrictive interpretation of the applicable law. We reversed the termination of benefits and further reversed the OWC's calculation of Ms. Clay's AWW at $378.05 because it did not appear to include fringe benefits earned by Ms. Clay in her twenty years with Lourdes. Our calculation included an enhancement for fringe benefits which increased Ms. Clay's AWW to $416.71.

The Louisiana Supreme Court has remanded Ms. Clay's case based upon its recent decision finding that a value for fringe benefits to be paid in the future cannot be used to enhance the calculation of an hourly employee's AWW. *See Hargrave v. State of Louisiana, Through Department of Transportation and Development*, 10-1044 (La. 1/19/11), 54 So.3d 1102.

# I.

## ISSUE

On remand, we will reconsider whether the OWC erred in calculating Ms. Clay's AWW, "in light of the Louisiana Supreme Court's recent decision in *Hargrave*," regarding the interpretation and legislative intent of La.R.S. 23:1021(12)(a)(i) and (12)(f).

# II.

## FACTS AND PROCEDURAL HISTORY

This case is before us on remand from the Louisiana Supreme Court on the issue of fringe benefits used in the calculation of Ms. Clay's AWW. Our reversal of the OWC's termination of her benefits and the reinstatement of those benefits from the date of termination, August 25, 2008, forward, along with our award of additional attorney fees for her counsel's work on the appeal, are not at issue and remain undisturbed.

In our original opinion, after a de novo review pursuant to *Rosell v. ESCO*, 549 So.2d 840 (La.1989), we reversed the OWC's calculation of Ms. Clay's AWW at $378.05. Where her pay rate with Lourdes was $9.25 per hour, we found that her normal weekly wage was $370.00 ($9.25 x 40). We then added averaged weekly fringe benefits of $27.75 for paid time off (PTO), $11.56 for extended illness time (EIT), and a bonus averaged at $7.40 per week. We found that this total fringe benefit amount of $38.66 increased Ms. Clay's normal weekly wage of $370.00 to a total AWW of $416.71, for the purpose of calculating her workers' compensation benefit.

The Louisiana Supreme court remanded the case to us "for consideration in light of *Hargrave*," 54 So.3d 1102, which held that the value of annual and sick

leave, earned, but not previously taxed, does not enhance the calculation of an hourly employee's AWW in determining the worker's compensation wage benefit.

## III.

## LAW AND DISCUSSION

Ms. Clay was a forty-hour-per-week, full-time, hourly employee, paid every two weeks, in twenty-six checks per year. The calculation of Ms. Clay's AWW is governed by La.R.S. 23:1021(12)(a)(i), which provides in pertinent part as follows (emphasis added):

> If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate [is] multiplied by the *average actual hours* worked in the *four full weeks* preceding the date of the accident *or forty hours, whichever is greater*[.]

Accordingly, if a full-time, forty-hour employee actually works less than forty hours per week in the four full weeks prior to a work accident or injury, the employee is entitled to the "greater" presumption of forty hours per week. *See Hargrave*, 54 So.3d 1102.

Here, Ms. Clay used paid time off and vacation time during the four full weeks preceding her injury, such that she did not actually work forty hours per week during that period. Because Ms. Clay was a full-time employee, however, she is entitled to the presumption of having worked at least forty hours under La.R.S. 23:1021(12)(a)(i) and under *Hargrave*.

In *Hargrave*, the court found that Mr. Hargrave had used thirty-two hours of annual leave and eight hours of sick leave during the four full weeks prior to his accident and that he was entitled to the greater presumption of having worked forty hours under La.R.S. 23:1021(12)(a)(i). Mr. Hargrave's bi-monthly wage was $1,095.76 for eighty hours of work, and his forty-hour wage was $547.88. The court

3

found that he did not work any over-time during the four-week period prior to his injury and that, based upon a normal forty-hour work-week, his AWW was $547.88 (his hourly wage was roughly $13.70). The court in *Hargrave* found that there was no need to calculate further and, affirming the majority opinion from a panel of this court, denied Mr. Hargrave's request for an enhanced AWW based upon fringe benefits not yet paid.

There, the court discussed the legislative intent in La.R.S. 23:1021(12)(f), which provides in pertinent part as follows (emphasis added):

> **Income tax**. In the determination of "wages" and the average weekly wage at the time of the accident, no amount shall be included for any benefit or form of compensation which is not *taxable* to an employee for federal income tax purposes.

In *Hargrave*, the court stated that it did not believe that the word "taxable" was intended by the legislature to be expanded to include "potentially" taxable fringe benefits that had not yet been received (or used) by the employee but would be received only "at some uncertain point in the future." *Hargrave*, 54 So.3d at 1107 (footnote omitted). Accordingly, Ms. Clay's disability benefit must be based only upon wages and fringe benefits actually paid and taxed during the four full weeks prior to her injury.

Ms. Clay's injury was June 28, 2005. She was paid every two weeks for eighty hours of work. Her normal hourly wage was $9.25. Hence, a normal, eighty-hour paycheck for Ms. Clay showed gross earnings of $740.00, and her normal forty-hour AWW was $370.00 ($9.25 x 40). If, however, she received payment for overtime hours during the four full weeks prior to her injury, her AWW is calculated on *averaged actual hours* worked, pursuant to La.R.S. 23:1021(12)(a)(i), because they are "greater" than the normal and presumptive forty-hour week.

4

Here, the pertinent paychecks are dated June 11 and June 25 of 2005. Ms. Clay's gross earnings on the check stub for the two-week period ending June 11, 2005, was the normal $740.00 for eighty hours of work. Her gross earnings on the check stub for the two-week period ending June 25, 2005, however, was $772.19. This check included pay for over eighty hours of time. More specifically, it included eighty-seven hours of pay, some of which represented paid time off ("PTO"); some of which represented regular time; and some of which represented night-time/other, a form of special or overtime pay.[1] The portion of the paycheck indicating sixty-four hours of "PTO" represents a fringe benefit already included, earned, used, received, paid, and taxed, during the full four-week pay period prior to Ms. Clay's accident; it is, therefore, includable in the calculation of AWW pursuant to La.R.S. 23:1021(12)(f). This check included nineteen hours of regular pay and four hours of pay for night-time/other work, which appears to be special or overtime pay. These hours are used in the calculation of AWW because they represent actual hours worked under La.R.S. 23:1021(12)(a)(i).

Accordingly, the two weeks of pay at $740.00 plus the two weeks of pay at $772.19 equal four weeks of pay at $1,512.19, which, divided by four, results in an AWW of $378.05. This figure represents Ms. Clay's *averaged actual* earnings received by her *and taxed* in the four full weeks prior to her injury, pursuant to La.R.S. 23:1021(12)(a)(i) and La.R.S. 23:1021(12)(f), and pursuant to *Hargrave*. To the extent that the OWC calculated Ms. Clay's total AWW at $378.05, we affirm that portion of the OWC judgment.

---

[1] While the calculation of night-time/other pay (shown on the pay stub as "NgtOthr") is not discussed or examined in the record, Ms. Clay's time-card summary shows that she worked an extra long shift beginning at 3:00 a.m. on June 18, 2005. On her pay stub for June 25, 2005, out of the eighty-seven hours for which she was paid, four hours were designated as "NgtOthr" pay.

IV.

**CONCLUSION**

Based upon the Louisiana Supreme Court's remand of Ms. Clay's case to us "for consideration in light of *Hargrave v. State, through DOTD*, 2010-1044 (La. 1/19/11)," 54 So.3d 1102, we find that Ms. Clay's AWW is $378.05, and we affirm the OWC judgment on that issue.

Costs are assessed to the defendant.

**AFFIRMED IN PART ON REMAND**.