| KENNETH PREVOST | * | NO. 2024-CA-0115 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| CITY OF NEW ORLEANS | * | |
| FIRE DEPARTMENT | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
NO. 20-01056, DISTRICT "08"
HONORABLE Catrice Johnson-Reid, The Office of Workers' Compensation
* * * * * *
**Judge Paula A. Brown**
* * * * * *
(Court composed of Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge
Karen K. Herman)

William Roy Mustian, III
STANGA & MUSTIAN, APLC
3117 22nd Street
Suite 6
Metairie, LA 70002

      COUNSEL FOR PLAINTIFF/APPELLEE

Stephen G. Collura
Wayne J. Fontana
ROEDEL PARSONS BLACHE FONTANA PIONTEK & PISANO, ALC
1555 Poydras Street, Suite 1700
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLANT

                                     **AFFIRMED**
                              **OCTOBER 04, 2024**

This is a dispute over Workers' Compensation benefits. Appellant, City of New Orleans Fire Department ("NOFD"), appeals the Office of Workers' Compensation, District 8 ("OWC") June 15, 2022 judgment in favor of Appellee, Kenneth Prevost ("Mr. Prevost"), which ordered that his benefits be reinstated back to the date of modification at a rate of six hundred nineteen dollars ($619.00) per week. The OWC judge further found that NOFD had been arbitrary and capricious when it modified Mr. Prevost's benefits and that he was entitled to penalties in the amount of two thousand dollars ($2,000.00) and attorney's fees in the amount of three thousand dollars ($3,000.00). Additionally, Mr. Prevost filed an answer to the instant appeal, requesting an award of an additional two thousand five hundred dollars ($2,500.00) in attorney's fees for the extra expense incurred in the continued litigation before this Court. For the reasons that follow, we affirm the district court's judgment and award Mr. Prevost an additional two thousand five hundred dollars ($2,500.00) in attorney's fees.

**FACTUAL AND PROCEDURAL HISTORY**

1

Mr. Prevost began his employment with NOFD sometime in 1985 and remained employed as a firefighter until February 18, 2014, when he suffered a disabling injury from falling down a flight of stairs while fighting a fire. According to the record, Mr. Prevost injured his back, left shoulder and right knee.[1] NOFD did not dispute that Mr. Prevost's injuries were compensable under the Louisiana Workers' Compensation Act ("LWCA")[2] and began paying wage and medical benefits immediately thereafter.

The record reflects that after significant medical treatment, therapy and vocational rehabilitation, Mr. Prevost's treating physicians, Drs. Petrocy and Waring opined that, due to permanent physical restrictions relating to the accident, Mr. Prevost would be precluded from returning to normal duties as a firefighter, but that he could perform sedentary tasks. This determination was corroborated by reports furnished by Second Medical Opinion ("SMO") Drs. Steiner, Lyons and Crapizano. In accordance with La. R.S. 23:1226,[3] NOFD provided Mr. Prevost with a licensed professional vocational rehabilitation counselor, Amy

---

[1] Mr. Prevost's medical records indicate that he underwent shoulder surgery in September of 2014 and right knee surgery in June of 2015 and June of 2017.

[2] The LWCA is codified in Louisiana Revised Statutes 23:1020.1, et seq.

[3] Louisiana Revised Statutes 23:1226 provides, in pertinent part:

> A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. Vocational rehabilitation services shall be provided by a licensed professional vocational rehabilitation counselor, and all such services provided shall be compliant with the Code of Professional Ethics for Licensed Rehabilitation Counselors as established by R.S. 37:3441 et seq.

Mroczkowska ("Ms. Mroczkowska"), through CorVel Corporation ("CorVel")—a third-party workers' compensation claims management company.

Initially, Mr. Prevost's wage benefits were paid commensurate with a status of temporary total disability ("TTD").[4]   However, on July 25, 2018, Mr. Prevost, through his attorney, received a letter from CorVel and a Form 1002[5] indicating that his benefits had been switched from using the TTD model to a supplemental earnings benefit ("SEB") model.[6]   The letter explained that Mr. Prevost had reached maximum medical improvement with permanent work restrictions of sedentary physical demand and that, although the payment models were changing, there would be no reduction in the total amount of monthly benefits.

---

[4] *See* La. R.S. 23:1221(1)(a):

> For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.

[5] The Form 1002 is a "Notice of payment modification, suspension, termination or controversion of compensation or medical benefits."

[6] *See* La. R.S. 23:1221(3)(a)(i):

> For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits, payable monthly, equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his wages by fifty-two and then dividing the product by twelve.

A little less than a year later, on June 18, 2019, Mr. Prevost received another Form 1002 from CorVel, this time indicating that his benefits had been reduced. On the same day, Mr. Prevost's attorney faxed a letter to CorVel to acknowledge receipt of the Form 1002, but decrying the fact that Mr. Prevost's benefits were being reduced from two thousand four hundred seventy-six dollars ($2,476.00) per month to one thousand eight hundred twenty-one dollars and forty-two cents ($1,821.42) per month without any explanation. In response, on June 20, 2019, CorVel sent a letter, which explained that its vocational case manager had identified three jobs that fit within Mr. Prevost's restrictions. It then used the lowest hourly pay rate of those jobs to calculate the SEB amount Mr. Prevost was entitled to. Specifically, the three identified jobs were: (1) pet concierge at Thrive Vetcare; (2) receptionist at Restaurant Depot; and (3) front desk associate at Massage Envy.

On February 12, 2020, Mr. Prevost filed a Form 1008—Disputed Claim for Compensation—with the OWC. After multiple continuances,[7] the matter was heard by the OWC judge on March 8, 2022.[8] The hearing consisted of the testimony of Mr. Prevost as he answered questions from both counsel and the judge. Both parties were allowed to submit post-trial memoranda by the close of business on April 1, 2022, at which time the OWC judge took the matter under

---

[7] For context, we note that on March 11, 2020, Governor John Bel Edwards issued Proclamation Number 25 JBE 2020, which declared that "[p]ursuant to the Louisiana Health Emergency Powers Act, La. R.S. 29:760, et seq., a statewide public health emergency is declared to exist in the State of Louisiana as a result of the imminent threat posed to Louisiana citizens by COVID-19, which has created emergency conditions that threaten the lives and health of the State." This emergency declaration was renewed on a monthly basis until it was allowed to expire on March 16, 2022.

[8] The transcript from the hearing purports that the hearing occurred on March 8, 2023; however, it is clear from the record that the hearing actually took place on March 8, 2022.

4

advisement. On June 15, 2022, the OWC issued its judgment, which ordered that Mr. Prevost's benefits be reinstated back to the date of modification at a rate of six hundred nineteen dollars ($619.00) per week, and that Mr. Prevost was entitled to penalties in the amount of two thousand dollars ($2,000.00) and attorney fees in the amount of three thousand dollars ($3,000.00), holding that NOFD had been arbitrary and capricious when it modified Mr. Prevost's benefits. This appeal followed.

## STANDARD OF REVIEW

"In workers' compensation cases, appellate courts apply the manifest error, or clearly wrong, standard of review to factual findings by the Office of Workers' Compensation." *Matthews v. Big Easy Janitorial, L.L.C.*, 22-0164, p. 5 (La. App. 4 Cir. 8/10/22), 346 So.3d 325, 330 (citing *Dean v. Southmark Constr.*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117). "To reverse a trial court's factual findings under the manifest error standard, an appellate court must find that 'a reasonable factual basis does not exist for the finding of the trial court' and that the record establishes that the finding is clearly wrong." *Id.* at p. 5, 346 So.3d at 331 (quoting *Stobart v. State through Dep't. of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993)). "This standard of review acknowledges that the trial courts are more appropriately equipped to weigh the credibility of live witnesses and upholds the unique functions of the trial and appellate courts." *Id.* at p. 6, 346 So.3d at 331 (citing *Stobart*, 617 So. 2d at 883).

## ASSIGNMENTS OF ERROR

NOFD asserts two assignments of error for our review, which we summarize as follows:

1. The OWC erred in finding that NOFD improperly modified Mr. Prevost's wage benefits; and

2. The OWC erred in finding that Mr. Prevost was entitled to penalties and attorneys' fees because NOFD acted arbitrarily and capriciously.

We will address each in turn.

**DISCUSSION**

*Mr. Prevost's Wage Modification*

In this assignment of error, the salient issues presented to us are: (1) whether the potential jobs identified by CorVel's vocational rehabilitation counselor were "available" within the jurisprudential meaning of that word; (2) whether NOFD or Mr. Prevost was charged with carrying the burden of proof to demonstrate that any of the identified jobs were available; and (3) whether that burden of proof was met.

Louisiana Revised Statutes 23:1221(3)(c)(i) establishes the requirement that an employer must prove a job is available in order to validate adjusting benefits. It provides:

> Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.

NOFD contends that under the Supreme Court's reasoning presented in *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, actual job placement is not required and that it is only necessary to prove job availability by establishing:

(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;

(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and

(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.

96-2840, pp. 10-11 (La. 7/1/97), 696 So.2d 551, 557. NOFD argues that it has met these minimum requirements by offering for our review the three potential jobs as presented to and approved by Dr. Waring and by pointing to the testimony elicited from Mr. Prevost at the OWC hearing.

To the contrary, Mr. Prevost asserts that NOFD has offered nothing in the way of proof that the three potential jobs were actually available at the time that they were communicated to him. Mr. Prevost further argues that, in spite of NOFD's position that the jobs must have been available because they accepted his applications, this does not establish that those jobs were, in fact, available at that time. We agree with Mr. Prevost.

As it was noted in the OWC's written reasons for judgment, our Supreme Court opined in *Clay v. Our Lady of Lourdes Reg'l Med. Ctr., Inc.* that where an employee applies for jobs presented in a labor market survey and is not hired or offered any of the jobs, that fact—standing alone—does not prove that the jobs are unavailable. 11-1797, pp. 12-13 (La. 5/8/2012), 93 So. 3d 536, 543-44. The *Clay* court did, however, continue to place the burden on the employer to demonstrate that the potential jobs were actually available at the time the employee was notified of their existence.

In the matter before us, Mr. Prevost testified that he had applied for all three of the potential jobs cited by NOFD, but was not offered a position at any of them.

7

He further testified that, on an interview from a separate job referral (not one of the three at issue here), it was relayed to him that there were no available jobs, but that they continued to receive applications from OWC vocational rehabilitation participants. The OWC judge found Mr. Prevost—the only person to testify at the OWC hearing—to be a credible witness. Furthermore, as Mr. Prevost points out, NOFD has failed to offer any verifying affidavits or deposition testimony to corroborate the veracity of its assertion that the three potential jobs were available when he was notified of them.

Thus, in reviewing the record as a whole, we conclude that the OWC judge did have a reasonable basis to reach its determination that Mr. Prevost was entitled to have his benefits reinstated back to the date of modification at a rate of six hundred nineteen dollars ($619.00) per week. This argument is unpersuasive.

*Penalties and Attorney's Fees*

This Court was recently tasked with determining whether the award of penalties and attorney's fees was appropriate in a workers' compensation case. In *Lentz v. City of New Orleans, Police Dep't*, we noted that the authority for such awards emanates from the express provisions found in La. R.S. 23:1201(I), which sets forth, in pertinent part:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

22-0500, p. 9 (La. App. 4 Cir. 12/15/22), 353 So.3d 1060, 1066-67. We explained that "[t]he decision to impose penalties and fees is essentially a factual issue subject to the manifest error-clearly wrong standard of review." *Id.* at p. 9, 353

8

So.3d at 1067 (quoting *Baker v Harrah's*, 15-0229 p. 30, (La. App. 4 Cir. 3/9/16), 190 So.3d 379, 398). Quoting from our Supreme Court, we added:

> Awards of penalties and attorneys' fees in workers' compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Worker's [sic] Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation.

*Id.* (citations omitted) (quoting *Iberia Medical Center v. Ward*, 09-2705, pp. 18-19 (La. 11/30/10), 53 So.3d 421, 433-34). Finally, in examining the language of the statute, we held that when determining whether an employer acted arbitrarily and capriciously in a workers' compensation matter:

> Courts must evaluate whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. Employers must have some valid reason or evidence upon which to base his denial of benefits. Stated another way, employers must possess an articulable and objective reason to deny benefits at the time it took action.

*Id.* at pp. 9-10, 353 So.3d at 1067 (citations omitted) (quoting *Matthews*, 22-0164, pp. 18-19, 346 So.3d at 337).

Faced with the facts of the case *sub judice*—i.e., that NOFD has provided no testamentary or documentary evidence that it had a valid reason to reduce Mr. Prevost's benefits—we cannot say that the district court was clearly wrong in assessing a penalty and awarding attorney's fees. This argument is unpersuasive.

*Answer to Appeal*

As in this case, the *Lentz* court was also asked to award additional attorney's fees in an answer to that appeal. There, we held that "[i]t is well-established that '[a] workers' compensation claimant who timely answers the appeal is entitled to

9

increased attorney fees and penalties to reflect additional time incurred in defending against employer/insurer's unsuccessful appeal, especially where the claimant makes a clear showing of the employer's arbitrary and capricious refusal to pay the claim.'" *Lentz,* 22-0500, p. 10, 353 So.3d 1067 (quoting *Hucke v. New Orleans Glass*, 03-1709, p. 6-7 (La. App. 4 Cir. 2/11/04), 868 So.2d 166, 170-71). In the record before us, NOFD provided even less evidence to justify its reduction of benefits than the defendant did in *Lentz. See also Matthews,* 22-0164, pp. 22-23, 346 So.3d at 338-39 (wherein this Court awarded two thousand dollars ($2,000.00) in attorney fees, explaining that additional time and expense was incurred by the plaintiff when the appellant-employer had failed to reasonably controvert the appellee's claim and was not entitled to any relief). Accordingly, we find the award of an additional two thousand five hundred dollars ($2,500.00) in attorney's fees to be appropriate in this case.

## DECREE

For the foregoing reasons, we affirm the OWC's June 15, 2022 judgment in favor of Mr. Prevost, which ordered that his benefits be reinstated back to the date of modification at a rate of six hundred nineteen dollars ($619.00) per week, and found that NOFD had been arbitrary and capricious when it modified Mr. Prevost's benefits, resulting in his entitlement to penalties in the amount of two thousand dollars ($2,000.00) and attorney's fees in the amount of three thousand dollars ($3,000.00). Additionally, we award Mr. Prevost an additional two thousand five hundred dollars ($2,500.00) in attorney's fees for the added time and expense associated with this appeal.

**AFFIRMED**

10